## LANG'S HEIRS vs. WARING.

1. When a bill is dismissed without prejudice, the effect of the reservation is, to prevent the decree from constituting a bar to another bill brought upon the same title; but it by no means compromits the court as a judicial determination in favor of that title.

2. Although a court of equity considers and treats real property, purchased with the partnership funds, and held for the purposes of the firm, as constituting part of the stock of the partnership, it leaves the legal title undis-

turbed, except so far as may be necessary to protect the equitable rights of the respective partners.

3. If the heirs of the deceased partner are sued. in equity, by a derivative purchaser from the surviving partner, for a divestiture of title, they have the right to show that the alleged equity is founded in a wrongful conversion of the partnership effects, which a court of equity should not sanction.

4. And the fact that the firm is insolvent, and that all its assets are required to pay the debts, is no answer to their right to defend.

5. The case of Andrews' Heirs v. Brown (21 Ala. 437) was not intended to establish the doctrine, that a court of equity, in all cases where the surviving partner has disposed of the real estate of the firm, however unfair, inequitable, or unauthorized such disposition might be, would compel the heirs to convey : such a doctrine cannot obtain in equity.

6. If the surviving partner dispose of the real estate of the firm for a grossly inadequate consideration, and under such circumstances as were well calculated to cause it to be sold for an almost nominal sum, equity will not lend its aid to perfect such a sale ; especially, when its action is invoked by one whose conduct contributed, in all probability, to bring about the sacrifice.

7. The surviving partner having executed a mortgage, in his own name only, on real estate belonging to the firm, to secure the payment of notes which he had executed in the name of the firm as surviving partner, but which created no obligation as against the firm, the land was subsequently sold under judgments, older than the mortgage, which had been rendered against him as surviving partner, and was purchased by one of the plaintiffs, who thereupon entered upon the land, and was in possession at the time of the sale under the mortgage ; at which sale the land, though worth $8000, brought only $250 ; the first purchaser, having bought the interest of the second, and compromised with the administrator of the deceased partner, filed his bill in equity against the heirs to obtain a divestiture of their legal title : *Held,* that the court should not lend its aid to perfect such a sale, nor disturb the legal title of the heirs.

8. The maxim " *caveat emptor,*" as applicable to sheriffs' sales, holds as well in equity as at law.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. J. W. LESESNE.

THIS bill was filed by Moses Waring, the appellee, against the heirs-at-law of Willis Lang, deceased, to obtain a divestiture of their legal title to a certain storehouse and lot in the city of Mobile, and to enjoin them from the further prosecution of an action at law to recover its possession. The complainant alleges, that this lot was purchased by the firm of McRae & Lang (which was composed of said Willis Lang and one Colin C. McRae) with partnership funds, and for partnership purposes, and was held by them as partnership property ; that Lang died in 1837; that the said firm was largely

insolvent at that time, and McRae was also individually insolvent; that said McRae, as the surviving partner, proceeded to settle the affairs of the partnership, and disposed of all its assets, including said house and lot, and his own individual property, in payment of the firm debts; and that he died insolvent, in 1843, leaving a balance of the partnership debts still unsatisfied. The complainant then deduces two distinct titles in himself to the said house and lot under mesne conveyances from the said McRae, as surviving partner of the said firm; which may be thus stated:

1. He alleges that said McRae & Lang, during the existence of the partnership, had endorsed a note for about $3,600, for the accommodation of one Ryland, due and payable to one James F. Bates; and to secure them against their endorsement, Ryland had deposited in their hands for collection a note on one Graves for about the same amount; that they collected the note on Graves, but failed to apply the proceeds to the payment of Ryland's note to Bates, and were thus indebted to Ryland, as well as liable to Bates, at the time of the dissolution of the firm by Lang's death; that after Lang's death, McRae, as the surviving partner, executed a note to said Bates, in the firm name of McRae & Lang, for the said sum of $3,600, (which note was endorsed by Ryland,) and also executed a mortgage on said house and lot to secure its payment; that said note was not paid at maturity, and accordingly the house and lot were sold pursuant to the terms of the mortgage, at which sale it was purchased by Gayle & Phillips, they being the highest bidders, for the sum of $250; and that complainant, in 1845, purchased from said Gayle & Phillips, for the sum of $350, and received their quit-claim deed to the premises, thus obtaining a complete equitable title.

2. In addition to the title thus derived through Gayle & Phillips, the complainant alleges, that the firm of McRae & Lang, at the time of its dissolution by Lang's death, was largely indebted to Bartlett & Waring, of which firm complainant was the surviving partner; that complainant, as such survivor, obtained two judgments against said McRae, as surviving partner of the firm of McRae & Lang, on this indebtedness, amounting in the aggregate to about $15,000; that on

these judgments, which were rendered in 1838, previous to the execution of the mortgage to Bates, executions were duly issued, which were levied on the said house and lot; that the widow of said Lang, who was also his administratrix, filed her bill in equity to enjoin the sale of said house and lot under said executions, but her bill was finally dismissed, and the house and lot were then sold under said executions, and were purchased by complainant for the sum of $9,860; that a large balance was still due on said judgments, and complainant, after exhausting all the partnership property, commenced suits against the said administratrix of Lang to recover this balance out of his estate; that these suits were litigated for a long time, but complainant at length succeeded in obtaining a judgment in one of them, after which he compromised the other suit with the administratrix, by receiving in satisfaction of the entire balance her acceptance for about $6,000; that the entire value of the house and lot does not exceed $5,000, and yet the defendants have received more than twice that sum from complainant on account of it.

The defendants answered, insisting that the notes on which Waring recovered judgments against McRae, as surviving partner of McRae & Lang, were endorsed by McRae, in the firm name, without the knowledge or consent of Lang, for the accommodation of one Dade, and therefore created no obligation or liability against said Lang or themselves; that they are not bound by the judgments recovered by the complainant against said McRae and the administratrix of Lang, and that complainant purchased with full knowledge of their title; that complainant, previous to the filing of his bill in the present case, filed a bill in equity against them touching these same matters, which bill, after a long litigation, was finally dismissed by the Supreme Court, at its June term, 1850, (see 17 Ala. 145,) but without prejudice to the title which complainant might have under his alleged purchase from Gayle & Phillips; that complainant is precluded by this decree from again setting up any of the matters contained in his first bill, except his alleged purchase from Gayle & Phillips; that respondents do not know anything of the alleged transactions between said McRae & Lang, during the existence of the partnership, and said Ryland and Bates; but they allege that

said notes and mortgage were executed by said McRae indi-. vidually after the dissolution of the firm, and therefore cre-. ated no obligation against the firm, and could not affect them in any way.

. Such portions of the evidence as are relied on by the parties in support of the allegations in the pleadings, are detailed with sufficient particularity in the subjoined argument of the appellee's counsel; and the material facts, which bear upon the issues made by the bill and answers, will be readily understood from the statements contained in the opinion of the court. The chancellor sustained the bill, and granted the relief prayed; and his decree is now assigned for error.

HOPKINS, JONES & LOMAX, and JNO. T. TAYLOR, for the appellants. (No brief on file.)

GEO. N. STEWART, contra :

The right under which we claim this property is based on these propositions : 1st, that it was partnership property, bought with partnership funds, and for the use of the trade of the partnership itself; 2d, that the firm was, at the time of the death of Lang, "insolvent," owing more just debts than it had assets to pay with ; 3d, that it was disposed of by the surviving partner, and by his act applied to discharge debts of the firm ; 4th, that these were, in fact, debts for which the firm was bound ; 5th, that Waring has obtained this property by lawful conveyances, and that it has by passing into his hands, in truth and fact, extinguished debts of the firm to an amount greater than its utmost value.

That it was firm property is not in fact a debateable question. It is charged in the bill ; not directly, but only evasively denied by the answer, and is fully proved. That the firm was insolvent, is also a fact well established, and all the facts in the cause are in harmony with that conclusion. That it was properly disposed of by the surviving partner, is controverted by the appellants ; and they also assert that the debts for which the property was sold were not debts binding on the firm property. These two propositions embrace the main objections to our title, and those on which they rely, and must therefore be carefully examined.

We will have no great difficulty in settling the law of our case : we find it, in its main features, well settled by the decisions of this court. Indeed, it is declared that these propositions to which we allude, are no longer the subject of controversy, but that they are settled questions. These settled questions extend sufficiently far to cover our case. They are as follows : 1st, that "in a court of equity, real estate belonging to the firm is considered as personal property, to this extent at least, that it is liable to pay the debts of the firm, in the same manner as if it had been personal instead of real estate ;" 2d, that " the charges upon the real estate, being prior to the claims of the representatives of the deceased partner, override his wife's title to dower, as well as the title of his heir at law ;" 3d, that "as the real estate is considered as personal for the purpose of paying these debts, it must of necessity follow, that he has the right in equity to dispose of the real estate for this purpose ;" 4th, that " the heir at law holds the legal title, subvervient to, or in trust for, the surviving partner, who is charged with the payment of the debts." This is the language of the court in the case of Andrews' Heirs and. Adm'r v. Brown's Adm'r *et al.*, 21 Ala.

The law then on these points being found, we have but to make the application of it, and meet the objections raised by the appellants. Did the surviving partner convey the property ? Did his deed to Bates pass the right? It is argued that it did not, but passed only the individual half which belonged to the surviving partner. We deny that there is such a thing, in equity, as an individual half interest in partnership property ; although it is true, there is such a thing in relation to title at law, as to real estate. It is only in a court of law that the heir is considered as having the legal title cast on him by descent, but this is in reality a mere fiction, an dnothing else. It is necessarily, in all cases, a title in trust for some one, and can in reality in no case be held by the heir in his own right. The moment it is ascertained that the property is firm property, it is at once established that the heir is a trustee. If the copartnership is solvent, and its value is not needed to satisfy the claims of creditors, then its value must be realized by the surviving partner, so that he may settle the firm affairs and strike a balance between him-

self and the representatives of the deceased partner, and he must pay that balance to such representative. And here we will advance the proposition, that no partner, or his representative, has the right to demand a division of property specifically : each party has by our law a right to demand a sale, and the right of each is to the division of the net balance when realized, and to nothing else.—Story on Part. § § 356, 354, 355, 347, 350, note 1, and authorities cited ; Gow on Part. 257.

We will next inquire who is entitled to this money balance on final settlement of the partnership affairs? We say the "executor or administrator" of the deceased partner, not his heir. Gow says : "In the absence of express negative stipulation, the executor has a right to insist upon the application of the joint property to the payment of the joint debts, and a division of the surplus ; and if, within a reasonable time, the survivor do not account with him and come to a settlement, a court of equity will grant an injunction restraining him from disposing of the joint stock, and from receiving outstanding debts."—Gow on Part. 378 ; Collyer on Part. 141 to 144 ; 10 Leigh. Thus we see that the surplus or balance struck goes to the administrator, as personal estate, for payment, first, of the debts of the deceased partner, and then for distribution among his widow and heirs according to law; and it is only thus, and as distributee, that the heir can take, if any thing be left, and not as heir by direct descent. If then the firm be solvent, the heir is trustee of an individual half of the legal title to the lands of the partnership, and the trust is to convey it to whomever the surviving partner shall sell it to, for the purpose of settlement, so that the balance may be paid to the personal representative, which properly comes to him. But if the firm be insolvent, then the heir can have no interest whatever in it : it is a fund for the payment of the creditors of the firm, so far as it will extend, and it is the right and the duty of the surviving partner to apply it in payment, and it is the duty of the heir to convey it accordingly. In this case he is a bare, naked, legal trustee,—has no interest in the property, and has no claim, right, or title of his own, and cannot be allowed to attempt to assert his title at law. The profits made from the property, as well as the

property itself, after the decease of one partner, still belong to the joint stock till settled, as accession of capital.—Gow on Part. 380. The rents, therefore, cannot go into the hands of the heir, but belong to, and are subject to, the control of the surviving partner.

Thus we see this right at law is a mere fiction, as we have before stated. True, he has a title at law; but courts of law do not settle copartnership concerns : it is only in equity that they are to be settled, and equity treats real estate, " in all respects," as personal property. ' We say " in all respects,"— so is the text, and it must be carried out accordingly.—See Story on Part., p. 126, 128; Collyer 117; 1 Sumn. R. 182, 186. The principle regulating the trust is stated in the above cited case of Andrews v. Brown, 21 Ala. 443 ; and in addition to what has been cited from that case, we find the following language used : " Inasmuch as the real estate is considered as personal, for the purpose of paying the debts of the firm, and the surviving partner is charged with the duty of paying these debts, it must of necessity follow, that he has the right in equity to dispose of the real estate for this purpose ; for it would never do to charge him with the duty of paying the debts, and at the same time to take from him the means of doing it. Therefore, although he cannot, by his deed, pass the legal title to the purchaser, which descended to the heir of the deceased partner ; yet as the heir holds the title in trust to pay the debts, and the survivor is charged with this duty, his deed will convey this equity to his purchaser, and through it, he may call on the heir for the legal title, and compel him to convey."—p. 443.

We conclude, then, that McRae had the power to convey *the whole title.*

The remaining question then is, did he do so ? That he did, we think, is very clearly shown ; and the authorities in relation to the effect of that deed, we believe, are conclusive in our favor. The deed of mortgage by McRae purports to convey all the title or interest he could convey, and we have seen he could convey the whole, and he did so, and he intended to convey all he could convey. There is no limitation whatever in his deed. It is expressly as surviving partner that he conveys, and not in his individual right alone. We have seen,

it is true, that he could not convey the legal title, but he could convey all the interest of the firm in the property ; his deed in equity is binding on the heir, and the heir is bound to conform to it. The construction to be put on the deed is conclusively shown by the decision in the case of Dundas v. Hitchcock, 12 How. Sup. Ct. U. S. 271. The rule is there laid down, as a settled rule of construction, in these words : " Whoever conveys to a purchaser, without restraining the operation of his conveyance, shall be deemed to convey in every character which enabled him to give effect to his deed." Sugden on Powers 82, and Cox v. Chamberlain, 4 Vesey, Jr., 637, are cited in support of this rule. In the case before the court, McRae recites, that he conveys expressly as surviving partner, and of course all the title of the firm passes.

We do not suppose it can be successfully maintained that he could sell, but could not mortgage. Such a position would be untenable. The surviving partner has clearly the right to prefer one creditor to another.—3 Paige 518, 525 ; 2 Sanf. Ch. R. 366 ; 1 Brock. 456 ; Collyer on Part. 362 ; 1 Metcalf 515. In the case of Andrews v. Brown, 21 Ala. R. 437, this point was made in argument denying the right of the surviving partner to secure one particular creditor, which was the case there, but the objection was not sustained. Again ; this is a question in which the heir has no possible interest, as before shown, the firm being insolvent. Such a question could only arise between conflicting creditors : it is their interest only which would be affected. The right of the surviving partner to dispose of the partnership property is absolute.— He, and he alone, has the right to decide who shall be first paid, and may even secure the creditor he prefers by an assignment, " without the assent or concurrence of the representative of the deceased party, in such manner, and by giving such preference as he may think proper."—Egberts v. Wood, 3 Paige 525-6.

The argument used that the surviving partner has but a lien on the land, that he has no title, except as to half, and that consequently he cannot himself convey, but that it is only a decree of a court of chancery that can dispose of the land, and that the deed of the surviving partner operates nothing beyond the disposal of his own proper half, will do very well to use in a court of law ; but is at war with the

41

whole system when we are in a court of chancery. This argument we have already sufficiently answered.

The defence set up that the conveyance was not made to secure firm debts, is predicated upon the argument that the giving of the notes by McRae to Bates was a discharge of the obligation of the firm, and a substitution of the individual responsibility of McRae in its place. On this point we will refer to the authorities cited.—8 Cowen 77, 147 ; 4 M. & K. 108 ; 6 Ala. 673 ; 10 Barb. Sup. Ct. R. 372, &c. It is a question of intention ; a party is considered as releasing, where from his act it is supposed he intended so to do. It is the intent which must be inquired into.—4 Watts & Sergt. 100 ; 12 Johns. 409 ; 15 Sergt. & Rawle, 162. In this case, the manner of signing both the notes and the mortgage, conclusively shows what the intent was. They are signed as surviving partner, and not in the maker's individual character. The manner of signing is always looked to for the intent.—Whether a partner giving a bond for an antecedent debt discharges the debt or not, depends on the circumstances.—6 Watts & Sergt. 168 ; 4 Watts 378. But the question here is not that of a partner giving his own paper for a firm debt : it is the case of a surviving partner settling the firm debts.

At law the surviving partner is the sole debtor ; he alone can be sued ; he alone must pay ; the assets of the firm are vested in him to pay with. The assets are a fund for the satisfaction of those debts ; the creditors have the right in equity to satisfaction out of those assets. By law, the debt cast on the survivor is a sole and personal debt, and such a claim against him may be joined in an action with a demand personally due by himself. The surviving partner could apply the firm property to pay a note which he individually had given for a firm debt. Why not? He could sell the property for money to pay the debt with ; then if he gives his note, even his own note, he can sell the firm property to pay that note with, or even reimburse himself, if he has paid it. He has the full power to dispose of the firm property, and owes only a settlement to the representatives of his partner, a money balance if any be due.

If we were now suing the estate of the deceased partner, there would be more plausibility in the argument ; but we are

looking to the firm property only. Suppose the surviving partner had sold all the property at public sale immediately after the decease of Lang, to raise funds to settle the debts, and had afterwards given us his own private note even ; where would be the difference in the result? Certainly that would have been a lawful disposition of the property. There were in this case more debts than value of assets ; a sale of the property was indispensable in any event. The authorities, in cases of partnership debts, do not treat this subject as in other cases ; even among living partners, the partnership liability is not held discharged on light grounds.—Gow on Part. Even in cases where partners give their individual obligations to satisfy firm debts, they are considered as sureties for the firm, and may apply the firm property to pay such obligations. Averill v. Louck, 6 Barb. S. C. Rep. 477; Mosteller v. Best, 7 Iredell's Eq. 39. Where one partner pays for the firm, he has the right to be reimbursed out of the firm property.

The inadequacy of price is alleged as an objection. This objection must be considered in three points of view : 1. Is there such inadequacy of price as would invalidate the sale, and would the objection, as here presented, be sufficient of itself in any case? 2. Are the defendants parties competent to set up such an objection? 3. Would a court of equity, under all the circumstances of this case, deprive the complainant of the property which he has paid for, for which he has given more than it was ever worth, and who did not purchase it voluntarily, or on speculation, but as payment which he could not obtain in any other way, and when he has constantly offered to yield it up, on being refunded what it cost him? We think the case is against the defendants on every one of these propositions.

1. As to the first point : Where there is a public sale, to the highest bidder, the objection does not apply, unless there is some unfairness shown. The mere fact that the price is low, is not, of itself, sufficient. Here no legal objection is shown. It was agreed it should be so sold, and it was sold as agreed, with due notice to all persons. What price would the court require to make it a valid sale? Where is the line or point, under which the sale would be bad, and over which it would be good?

2. But if the objection is a good one, can these parties set it up? Does the price affect them in any way? It did affect McRae, because the sale at a low price left him a large bal-ance of the debt to pay; he, however, made no objection, nor did any one representing him. It did affect Bates, because he did not by this sale obtain full payment of his debt; but he did not stop the sale, nor advertise to re-sell it: he carried out the sale without objection. It affected Ryland still more than it did him; because Ryland was bound to Bates for any deficiency which the property would fail to produce as to the larger debt secured by it. He had a deep interest in the price, but he had full notice of the sale, and would not give more; nor did he question the validity of the sale in any way. Gayle and Phillips, who purchased, voluntarily re-sold it, and they were content with a very small price; yet they knew its value as well as any one. The administratrix of Lang was the party to receive from the surviving partner any surplus or share of the partnership property after all debts were paid, and thus would, if the firm was solvent, have had an interest; but she had full notice of the sale,—the firm was insolvent,— nothing could come to her in any event. She made no objection, and with her we have fully settled. The administratrix is the true representative of the rights of the deceased partner, as we have seen, and if there was any surplus, it would be assets in her hands to pay debts of Lang first, before the distribution to the heirs. Thus, it seems, these appellants have no interest whatever in the question of inadequacy of price. If it had sold for its full value, the result to them would be precisely the same: no part would in any event go to them. The court will not do an idle thing without purpose or object, and entertain litigation where no results can follow.

3. But would a court of equity sustain such an objection in a case like this? Equity will look to the general result, no matter how that result has been arrived at. In this case a result has been attained, which is precisely what a court of equity would have decreed as between the parties to this suit. Waring represents a creditor to whom there was due $15,000 and more.. The firm was insolvent, but owned this property. Waring was diligent as a creditor to endeavor to obtain payment of his debt; he has obtained a portion only, and actually

released a part. And this property, worth from $5,000 to $6,000, say the witnesses, he bought at the sheriff's sale for nearly $10,000, under a mistake, supposing he bought the whole interest in it. These payments he has obtained on fully establishing his rights, against the surviving partner, and against the administratrix, and after the most harassing litigations at law and in equity, in all of which the court always gave judgment in his favor. His abandonment of a part of his debt, on settlement with the administratrix, was founded on the then admitted fact, that he had the whole title to the store, which she concedes. By legal construction he was deprived of half the title ; but morally and equitably he certainly was entitled to the whole : he had paid a full price for it, and had settled with the administratrix on that footing. Waring then had purchased in good faith, and supposed he owned the whole; and when a doubt was suggested that his deed did not cover the whole, but one half only, he was advised to fortify and supply his title by purchasing the title to the other half from the party who claimed it, which he did. This he had the full right to do, and equity would uphold such a course, and not condemn it.

It is said, the low price of the sale made by Bates was caused by the fact that the property had already been sold by the sheriff, and was claimed by, and was supposed to belong to, Waring ; that Bates thought so, and that Gayle and Phillips thought so ; and after they had failed to recover on their title against Waring, they sold for a small price to Waring, supposing their title not to be good. Let all this be admitted ; we say, Waring also supposed his right to the whole to be complete ; but if his purchase did create this belief, this whole matter was based upon his having paid the full value of the whole title. That fact prevents any wrong being laid at his door in a court of equity. A court of chancery would allow him to hold the property in payment of his debt, because that is both lawful and equitable, and will require but one condition of him—that is, that he shall have given adequate value for it. This he has done, and it matters not how or in what shape, so that Lang's estate shall have obtained the full benefit of the fair value ; this it has done. Equity will sustain a result which accomplishes that which it would have compelled

if it had been applied to, however unauthorized or illegal may have been the proceedings by which that result is arrived at. Butler v. Merchants' Ins. Co., 8 Ala. 146.

Those transactions involved in the former case, then—that is, the purchase at sheriff's sale, and settlement with the administratrix—are not set forth here as creating sufficient title, but merely to satisfy the court in its discretion, and to show that it should not act on any question of inadequacy of price, because it would not be right, but would be wrong to do so. We suffered already by our misconception of the law, when we were told that, though we purchased the whole of the sheriff, we obtained only one half, and had no return of part of the price, or means of obtaining it back. Now, if we have purchased a good right, at a low price, the equities are balanced and satisfied. The rule should work both ways ; and the result of the whole is, that we have paid the full value fairly for the property, and there is in fact no inadequacy of price.

The fact of the litigation, settlement and compromise made between Waring and the administratrix of Lang, is, and should be, conclusive against the claim of the heirs of Lang, there being no collusion on her part ; because, as we have before insisted, the heirs could never in any event take anything out of the partnership property, except by way of distributive share from the administratrix of Lang's estate, in a general distribution by her, after satisfying all Lang's debts. Hence her act is conclusive. She was the proper party to claim of the surviving partner the proper balance coming to Lang's estate, if any, and that in money ; and she alone could compel him to account in equity. This position, it seems to us, shows that the heir has no interest in the question in this case, and cannot be heard here. It results that this whole transaction having been litigated, decided, compromised and settled, and acquiesced in by the surviving partner, the administratrix, and the conflicting creditors and purchasers,—the whole matter is closed, and these heirs have no interest whatever in the subject in any way. They hold the legal title as bare, naked trustees, for our use, and without any interest whatever in themselves, and are bound to convey to us.

CHILTON, C. J.—1. A bill between these same parties was dismissed by this court at a previous term (17 Ala. 145), but without prejudice as to any supposed right which the complainant might have acquired in virtue of his purchase from Messrs. Gayle & Phillips. The effect of·such reservation in the decree of dismissal is, to prevent such decree from constituting a bar to another bill brought upon the same title ; but it by no means compromits the court as a judicial determination in favor of such title. In so far as the former decision leaves the questions for discussion open, we must address ourselves to them as though they were·for the first time before us.

2. After much vacillation by the English courts, the doctrine may now perhaps be considered settled, that, unless there is something in the articles of copartnership, or some agreement by the partners to the contrary, real estate purchased with partnership funds, for partnership purposes, is, in a court of equity, converted, and treated as personalty, and therefore goes to the personal representatives, and not to the heir of the deceased partner.—See Bisset on Part. 55-6; Coll. on Part. (3d edit.) 141.

While the decisions of the American courts generally concur in affirming that such estate is, in equity, chargeable with the debts of the copartnership, and with any balance which may be due from one copartner to another, there is much conflict among them, as to whether the surplus, in case of the death of a partner, shall descend to the heir as real estate, or go to the personal representative for distribution.

Judge Story, in Hoxie v. Carr, 1 Sum. R. 183, inclined to the opinion, that the disposition of the surplus of such real estate must depend on the presumed intention of the deceased partner, as to whether it should be treated as realty, or impressed with the artificial character of personalty. In his work on Partnership, however, (§ 93,) he leaves the question unsettled, and says that, from the diversity of judicial decision, the doctrine is open to many distressing doubts. In his work on Equity Jurisprudence, he sides with the English doctrine.

Chancellor Kent follows the English cases, and holds, that " the property will be entitled to be distributed as personal

estate."—3 Kent, (6 edit.) 37. Chancellor Walworth, in Buchan v. Sumner, 2 Barb. Ch. R. 200-1, held, and thought the American cases, many of which he cites, might be considered as establishing, that, as between the personal representatives and the heirs-at-law of a deceased partner, his share of the surplus of the real estate of the partnership, which remains after paying the debts thereof and adjusting all the equitable claims of the different members of the firm as between themselves, is considered and treated as real estate.

Without citing the numerous authorities upon this subject, which may be found collated in those above referred to, we think the true rule is, that, although a court of equity considers and treats real property, purchased with the copartnership funds, and held for the purposes of the firm, as constituting part of the stock of the firm, it leaves the legal title undisturbed, except so far as it may be necessary to protect the equitable rights of the respective partners. Such was the opinion of Chancellor Walworth, in the case last cited (2 Barb. Ch. R. 206.)

3. We do not well see upon what principle the courts have ever held that the heirs of the deceased partner are but naked trustees of the legal title, without any beneficial interest. True, they hold as trustees for the surviving partner for the purpose of adjusting the debts and equities growing out of the partnership relation; but they have an ultimate *interest*. The purposes of the partnership accomplished, and the liens and equities adjusted, they are the sole beneficiaries of their ancestor's share. But, if we concede that they cannot take the surplus directly as heirs, and hold that it must pass through the hands of the deceased partner's personal representative, even then we are not prepared to say, that they are so wholly without any beneficial interest as to deny them the privilege, when sued for a divestiture of title, of showing that the alleged equity is founded in a wrongful conversion of the partnership effects, which a court of equity should not sanction.

The court, it seems to us, will not be astute in ferreting out their interest, as to whether it is certain or uncertain, immediate or remote, in order to shut the mouths of the heirs. They are the only parties sued, and the court ought not to become active in divesting them of their *legal* title, which, by

operation of law, may possibly become united with a perfect equity, in favor of any one whose claim to relief cannot stand before their assault.

The former opinion in the case between these parties, (17 Ala. 145-66,) is conclusive upon this point; for, if the survivor has the unqualified right to dispose of the real estate of the firm, and the heir may not gainsay it, upon what principle could the court look into the consideration of the mortgage deed, and question the power of the survivor to execute notes in the name of the firm as the evidence of the demands secured by the mortgage? The complainant was a derivative purchaser, exhibiting the mesne conveyances, from the survivor, of the entire land or lot of ground. The survivor made no complaint; and if he had the right to appoint the person to take the legal title, irrespective of the nature and objects of the transfer, who shall interpose? The case just cited furnishes the answer : the heirs did interpose, and with success.

4. It is no answer to their right to defend, that the firm is insolvent, and that the whole of the assets of the firm are required to pay the debts. The surviving partner is not calling for this land, as assets of the firm, to administer it for firm purposes. If the disposition which he has made of it amounts to a proper and legal administration of it for the objects of the firm, of course the court will uphold it ; but, on the other hand, if the disposition is unlawful, or such as good faith requires should not have been made, the court will find in the insolvency of the firm, which may have been superinduced by such mal-administration, an additional reason for withholding its aid. If this estate has never been properly disposed of, and yet remains as assets of the firm, we cannot undertake to say that the firm will be finally insolvent. It is an event dependent, it may be, upon the amount which this property may bring, and which the future alone can develop. Upon the whole, we think the heirs should be allowed to discuss the plaintiff's right.

5. In Andrews' Heirs v. Brown's Adm'rs, 21 Ala. 437, it was held, that as the surviving partner is charged with the payment of the debts of the firm, he has the right, in equity, to dispose of the real estate owned by it for that purpose;

and that, although his deed will not convey the legal title to the purchaser, yet it will convey this equity to him, and through it he may compel the heir to convey the legal title. Whether this proposition, thus broadly asserted, as respects the right of a surviving partner to execute a mortgage upon the real estate of the firm, can be supported as correct law, we will not now inquire. It was certainly not intended to establish the doctrine that a court of equity, in all cases of disposition by a surviving partner of the real estate of the firm, however unfair, inequitable or unauthorized such disposition might be, would compel the heirs to convey, and thus become the minister of injustice. Such a doctrine would be monstrous, and could never obtain in a court which administers justice upon the broad principles of equity and good conscience.

6. Without intending to affirm the correctness of Andrews v. Brown, *supra*, but conceding, for the purposes of this argument, that the surviving partner has the power to make a mortgage, *subject to the confirmation of the court of equity*, and that if the sale be fair and *bona fide*, such as the court would have sanctioned and sustained, if it had been made under its own direction, the same would be upheld and the legal title decreed to the purchaser ; yet, if it be for a grossly inadequate consideration, and made under such circumstances as were well calculated to cause it to be sold for an almost nominal sum, the court ought not to lend its aid to perfect such a purchase. Especially should it withhold its action, when invoked by one whose conduct has contributed, in all probability, to bring about the sacrifice.

7. There are several circumstances connected with this transaction, which account for the sacrifice, as they were well calculated to cast a cloud over the title, if not to deter all persons from bidding for the property when it was sold under the mortgage. In the first place, the mortgage was made by McRae alone, and it does not purport to convey in terms the interest of the deceased partner. It was made while Bartlett & Waring had judgments against McRae, as survivor of the late firm, for a large amount. Then it was made to secure the payment of notes executed by the surviving partner in the name of the late firm, which, as previously decided, (17 Ala., *supra*,) created no obligation as against the firm. Add to all

this, that before the sale under the mortgage, which took place the 4th May, 1840, the lot had been sold under the judgments of Bartlett & Waring, whose judgments were older than the mortgage, and purchased by Waring on the 4th March, 1839, who took and held possession when the sale under the mortgage was made,—and it is by no means surprising that the lot, proved to have been worth some eight thousand dollars, should have been sold for two hundred and fifty dollars.

It occurs to us, that, if there ever was a case where good faith required the surviving partner to resort to equity to have the estate disencumbered, so that the purchaser might know what interest he was buying, and that the property might not be sacrificed, this was one of that character.

This is not an application to chancery to set aside an executed contract for inadequacy of price,—in which case, it is conceded, the inadequacy must be so gross as "to shock the conscience of the chancellor, and be evidence of fraud,"—but it is an appeal to the equity of the court to sanction an act done by another, which is of no validity without such sanction. It is, in effect, the adoption as its own of the act of the surviving partner, who, without its aid, cannot make a valid disposition of this property; and as it is too clear to admit of any doubt, that injustice has been done, by the sacrifice of the property for an almost nominal sum compared with its true value, we are clearly of opinion the court should not sanction it, nor disturb the legal title by reason of it.

Other considerations are relied upon by the complainant to strengthen the moral justness of his claim ; but we know of no rule of law or equity which will enable us, as chancellors, to make the complainant's previous improvident purchase, or his liberal compromise with the widow and representative of the deceased partner, any ground for a decree on this title.

8. As to the purchase made by the appellee at sheriff's sale, it is only necessary to say, the maxim is " caveat emptor," and that in such cases this maxim applies as well in equity as at law.   He then took by that purchase only the share of the surviving partner, and the amount bid must be regarded as the price of that share.

Upon the whole, our conclusion is, that the complainant shows by the record no case for the relief he seeks, and that the decree of the chancellor is erroneous. Let the decree be reversed, and the bill be here dismissed.