# BURNS vs. HUDSON.

[BILL IN EQUITY BY FEME COVERT, FOR RECOVERY OF SLAVES, AS PART OF SEPARATE ESTATE, WITH ACCOUNT OF HIRE, &C.]

1. *Husband's marital rights in and to wife's personalty.*—Prior to the adoption of the statutes of this State securing to married women their

Burns v. Hudson.

separate estates, if a slave was given by a father to his married daughter, or was purchased by the daughter at the administrator's sale of her father's estate, and was not in either case settled to her separate use, the husband's marital rights attached, and the slave became his absolute property.

2. *Variance between allegations and proof.*—The bill alleged, that the slave in controversy, in which the complainant claimed a separate estate under a contract between her husband and one J., was sold, conveyed and delivered by her husband to said J., in consideration of the latter's agreement to become surety for him in a certain law-suit, and to pay whatever judgment might be recovered against him; "and that whatever might be left of the value of the negro, and her hire, after satisfying the judgment that might be recovered against B. (the husband), and the girl herself, if she was not taken to satisfy the judgment, J. was to convey to, and settle upon complainant, in her own right, and as her own sole and separate estate, and to her heirs." The proof was, that B. delivered the slave to J. to indemnify him against his liability as surety for the costs of the law-suit, "upon condition that, if the suit should go against B., the negro was to be sold, and the proceeds of sale to be first applied to the payment of the costs of the suit, if necessary, and the residue, if any, to be paid over to the complainant; but, in the event that B. gained the suit, the negro was to be put in the possession of the complainant, as her own and separate property, and J. was to transfer to her all the title, interest and claim that he had to the negro, for her separate use and benefit." *Held,* that there was a fatal variance between the allegations and proof.

3. *Same.*—So, where the bill alleged, that J., in pursuance of his previous contract with B., verbally sold and delivered the slave to the complainant, as her separate estate, in consideration of her promise to secure and indemnify him against his liability as surety for B. in the law-suit; while the proof only showed, that he delivered the slave to her, and said that he made no further claim to the slave,—the variance was held fatal.

4. *Same.*—So, where the bill alleged, that the complainant afterwards delivered the slave to the defendant, upon his promise and agreement to indemnify J. against his liability as surety for B., to satisfy whatever judgment might be recovered against B., to keep the slave hired out at a specified price, to return her to the complainant after it was ascertained what he had to pay on the judgment against B., if the negro was not taken to satisfy the judgment, and to account for her hire; while the proof showed, that the defendant's agreement was to take the place of J. as surety for B., and to dispose of the slave, at the termination of the suit, in like manner as J. was to have disposed of her under his agreement with B., as above stated,—the variance was held fatal.

5. *Dismissal without prejudice.*—The complainant in this case being a married woman, suing by her next friend, and there being a fatal variance between the allegations and proof, the bill was dismissed without prejudice.

APPEAL from the Chancery Court of Calhoun.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Mrs. Mahulda Burns,
the wife of A. S. Burns, suing by her next friend, against
Samuel P. Hudson and the said A. S. Burns; and sought
a recovery of certain slaves in the possession of Hudson,
in which the complainant claimed a separate estate, with
an account of their hire. The complainant asserted title
to the slaves under a verbal gift from her father, in South
Carolina, in 1831, of the female slave who was the mother
of all the others; a subsequent purchase of said slave at
the administrator's sale of her father's estate, in South
Carolina, prior to the year 1840; a verbal contract between
her said husband and one John P. Jennings, made some
time during the year 1842 or 1843, by which Jennings
obtained the possession of said slave; a subsequent verbal
contract between Jennings and herself, by which she ob-
tained the possession of the slave; and a verbal contract,
of later date, between herself and the defendant Hudson,
under which she delivered the slave to him. The defend-
ant Hudson denied the title asserted by the complainant,
and claimed title in himself under a purchase from said
Jennings and A. S. Burns, made in the presence, and
with the consent of the complainant. The material alle-
gations of the bill, and the substance of the evidence, are
stated in the opinion of the court. On final hearing, on
pleadings and proof, the chancellor dismissed the bill; and
his decree is now assigned as error.

JOHN WHITE, for the appellant.
G. C. WHATLEY, contra.

R. W. WALKER, J.—There is no doubt that, when the
contract was made between A. S. Burns and John B. Jen-
nings, the negro girl Lucy was the property of the former;
for, whether we consider the original source of title, as a

gift from Mrs. Burns' father to her, or as her purchase at the administration sale, it is plain that, as the slave was in no way settled to the separate use of the wife, the marital rights of her husband attached, and the property became his absolutely.

[2.] If, then, Mrs. Burns has now a separate estate in the slave, or can justly claim a settlement of the same to her separate use, she must deduce her right from the transactions with John B. Jennings, or from the subsequent contract with the defendant. However well founded such a claim may be in point of fact, it can be of no avail to the complainant in this suit; for the reason, that the allegations and proof, in reference to the matters which form the foundation of her title to relief, if she has any, do not correspond.

The amended bill alleges, that the complainant's husband, being engaged in a law-suit, or law-suits, with one Hindman, sold, conveyed, and delivered the girl Lucy to John B. Jennings; and that Jennings, as a consideration therefor, contracted and agreed to become surety for Burns in said suit, or suits, in some way, and to pay whatever might be recovered against Burns; *and whatever might be left of the value of the negro, and her hire, after satisfying the judgments that might be recovered against Burns, and the girl herself, if she was not taken to satisfy the judgments, Jennings was to convey to and settle upon complainant in her own right, and as her own sole and separate estate, and to her heirs.* The only evidence in relation to the contract between Burns and John B. Jennings, is the testimony of William M. Jennings, the son of John B., who states, that his father became surety for Burns, for cost, in a law-suit between Burns and one Hindman; and that to indemnify Jennings, Burns delivered the negro Lucy into his possession, upon condition, *that if the suit should go against Burns, the negro was to be sold, and the proceeds of the sale first applied to the payment of the costs of the suit, if necessary, and the residue, if any, to be paid over to the complainant; in the event, however, that Burns*

5

*gained the suit, the negro was to be put in the possession of
the complainant, as her own and separate property, and Jen-
nings was to transfer to her all the title, interest, and claim
that he had to the negro, for her separate use and benefit.*

[3.] The bill further alleges, that in 1843 Jennings, by
a. verbal contract, sold and delivered the negro Lucy to
complainant, as her separate estate, and to her heirs, in
pursuance of his previous contract with Burns, in consider-
ation of the promise of complainant "to secure and
indemnify, and cause to be secured and indemnified, the
said Jennings against all loss and liability, as surety for
Burns in the suit or suits above-named." The only evi-
dence introduced to support this allegation, is the testi-
mony of Wm. M. Jennings and Mrs. Cowart. The first-
named witness states, that on a particular occasion in 1843,
and in the presence of the defendant, Mrs. Cowart, and the
witness himself, John B. Jennings remarked, that defendant
was willing to take his place as surety, and asked the
complainant if she was willing; to which she gave her
assent. Jennings then said to her, "There is your negro
woman; take her, and dispose of her as you choose."
Mrs. Cowart says, that Jennings remarked to the complain-
ant, that he now delivered her negro girl to her, and made
no further claim to her. There is no evidence of an agree-
ment, on the part of the complainant, to secure Jennings
against loss as surety for Burns, which is the *alleged* con-
sideration for the transfer; nor is anything said as to a
delivery to the separate use of the complainant. Cer-
tainly, the transaction, as proved, was not an execution of
the original contract between Burns and Jennings.

[4.] The bill further alleges, that upon the same day on
which Jennings delivered the girl to complainant, or
shortly thereafter, the complainant and defendant made
a contract, by which the complainant agreed to, and did,
deliver the negro Lucy to the defendant, and the defendant
agreed to secure and indemnify Jennings as surety for Burns,
and to pay and satisfy whatever judgments might be re-
covered against Burns; "that to make him safe in so doing,

he would take the girl into his possession—that he would keep her hired, at some good house, at six dollars per month ; that he would return the girl to complainant, after it was ascertained what he would have to pay on whatever judgments might be recovered against Burns in said cases in order to save Jennings harmless, if said negro was not taken to satisfy the judgments that might be recovered therein ; and upon that agreement, and that he would also account to complainant for the hire of said girl, the defendant took possession of said girl." The only proof to sustain this allegation, is the testimony of the same witness, J. M. Jennings, who states, that he delivered the negro to Hudson, for complainant ; and that the slave was to be disposed of in the hands of Hudson, at the termination of the law-suit between Burns and Hindman, in like manner as she was to have been by John B. Jennings. He further states, that it was agreed, that Hudson should take the place of Jennings as surety, and become liable in like manner as Jennings. Now, looking to the testimony of the same witness, to ascertain the manner in which the girl was to have been disposed of by Jennings at the termination of the suit between Burns and Hindman, we find that the agreement was, that "if the suit should go against Burns, the negro was to be sold, and the proceeds of the sale first applied to the payment of the costs of the suit, if necessary, and the residue, if any, to be paid over to complainant. In the event that Burns gained the suit, the negro was to be put in the possession of complainant, as her separate property." The difference between this contract, and that which the complainant alleges she made with Hudson, is obvious.

It is evident from this review of the allegations of the bill, and the evidence adduced in support of them, that in regard to each one of the successive transactions through which the complainant seeks to deduce her claim to relief—the original contract between Burns and Jennings, the subsequent transfer of the slave by Jennings to the complainant, and the contract between the com-

plainant and defendant—the case as stated · is not the case which is proved. Consequently, there was no error in dismissing the bill.

[5.] The evidence, however, does, as we have seen, tend to show that the defendant obtained possession of the negro under an agreement that he should take in all respects the place of Jennings—that is, that he was to become bound for Burns in like manner as Jennings had been; and that, at the termination of the law-suits, he would make the same disposition of the negro which, by his contract with Burns, Jennings had agreed to make. Without in any manner committing ourselves to the validity of any claim which complainant may assert as growing out of these facts, we think that, under all the circumstances of the case as disclosed by the record, it is proper that the bill should be dismissed without prejudice. Accordingly, the decree of the chancellor is reversed, and a decree here rendered, dismissing the bill without prejudice.—*Danforth v. Herbert*, 33 Ala. 499; *Singleton v. Gayle*, 8 Porter, 270; *Cameron v. Abbott*, 30 Ala. 419; *Lang v. Waring*, 25 Ala. 625; *Edwards v. Edwards*, 30 Ala. 394. The complainant's next friend must pay the costs, both of this court, and of the court below.

A. J. WALKER, C, J., not sitting.