Sullivan,
June 1, 1937.

### FRED S. CROSSMAN *v.* ROMEO A. QUIMBY *& a.*

*Henry N. Hurd* (by brief and orally), for the plaintiff.

*John H. Leahy* (by brief and orally), for the defendants.

MARBLE, J.   On April 15, 1930, the plaintiff, Fred S. Crossman, conveyed to Morris Nassau the Crossman Block, so called, in Claremont.   On May 1 Nassau executed a power-of-sale mortgage of the premises to Crossman to secure an installment note given in part payment of the purchase price.   Nassau having failed to pay the first installment, the plaintiff proceeded to foreclose the mortgage. Thereupon Nassau brought an action against Crossman for covenant broken, alleging that the town of Claremont claimed title to a part of the premises, which Crossman had covenanted to be free and clear of incumbrances.   This was followed by a bill in equity praying that Crossman be enjoined from proceeding further with his foreclosure during the pendency of the action at law.

The prayer of the bill was granted on condition that Nassau furnish a bond in the sum of $1,000 to indemnify Crossman for any loss or damage he might sustain by reason of the issuance of the injunction, and "it was ordered that . . . in the event litigation was not ended by May 1, 1931, Nassau was again to . . . furnish another bond in the sum of $1,000 and the same for every succeeding November 1 and May 1 [the dates when the installments fell due] as long as the case remained in Court."   Pursuant to this order, Nassau filed four bonds, each signed by himself as principal and by the defendants Quimby and Rossiter as sureties.

On May 14, 1932, Nassau filed a second bill, which "was intended and understood by the parties to be a continuation of" the former bill with the inclusion of the town of Claremont as a defendant.   A temporary injunction was ordered and a new bond with the same sureties filed in the sum of $4,000.   In this bond it was stipulated that, on the filing thereof, the previous bonds should become null and void.   The bond was conditioned upon Nassau's holding Crossman harmless "for all loss that may occur by failure of said Nassau to pay the amounts now due on the said mortgage note and for damages sustained by said injunction or for any continuation of said injunction that may be procured by said Nassau."   The original bill in equity was dismissed on May 31, 1932.

Early in 1933 Nassau was petitioned into bankruptcy, and on February 7, 1933, the defendant Quimby was appointed trustee of his estate.   Crossman filed no proof of claim against the estate, and

on May 31, 1933, entered into a written agreement with Nassau whereby "all proceedings" then pending against Crossman were to be dismissed and "all injunctions or restraining orders" vacated and dissolved. It was further agreed that no actions were to be brought by Crossman against Nassau on account of "their disputes or differences with reference to the purchase of the Crossman Block . . . by Morris Nassau and the sale of the same to him by Fred S. Crossman; except such remedies as Fred S. Crossman may have against Morris Nassau on certain bonds for indemnity . . . on which Romeo A. Quimby and Edward J. Rossiter are sureties." In accordance with this agreement Nassau reconveyed the premises to Crossman by quitclaim deed and dismissed his second bill in equity.

It is the defendant's contention that Crossman by consenting to the dismissal of this bill waived his rights under the bond and cannot therefore maintain the present action.

The general rule has been stated as follows: "The voluntary dismissal of an injunction suit by the plaintiff, after obtaining an interlocutory injunction and giving a bond, is regarded as such a judicial determination of the controversy and as such a breach of the condition as to warrant a right of action upon the bond. . . . But where the voluntary dissolution of an injunction by the plaintiff is with the consent of the defendant, he waives his rights under the bond and can not afterward maintain an action upon the bond upon the ground that the injunction was wrongfully granted." 2 High, Injunctions (4th *ed.*), *s.* 1649*a*. On the other hand, no inference of waiver can properly be drawn where, as in the present case, all "rights of action by reason of damages caused by the injunction" have been "expressly saved." *Tullock* v. *Mulvane*, 184 U. S. 497, 509. Authorities on the subject are collected and discussed in the case of *Janssen* v. *Shown*, 53 Fed. (2d) 608. See also 14 R. C. L. 475.

In point of fact, however, the evidence indicates, and the referee has found, that the injunction granted in connection with the second bill in equity was not dissolved by agreement of the parties but expired by the terms of the order itself on February 13, 1933, more than three months before the making of the agreement in question. Under these circumstances it might well be argued that Nassau's failure during those months to ask for the reinstatement and continuance of the injunction constituted a voluntary relinquishment of his right thereto and an admission that the injunction was wrongfully issued. That question need not be determined, however, in view of the plaintiff's express reservation of remedies and the finding that "nothing

was established by Nassau" in any of the litigation "to justify the granting" of the original injunction.

The plaintiff was not required to pursue any of his remedies against Nassau even if the defendants had requested him to do so; nor was he obliged to prove his claim against Nassau's bankrupt estate. *Morrison* v. *Bank*, 65 N. H. 253, 280. Moreover the defendant Quimby as trustee of that estate "was fully informed as to what was going on" and neither he nor the defendant Rossiter "took any steps to see" that the claim was filed. The damages (the amount of which is not in dispute) exceed the penal sum of the bond by nearly $600, and the dividend paid by the estate was so small that the defendants could not have been prejudiced in any degree by "the omission to present the claim in the bankruptcy proceedings."

The referee ruled that the dismissal of the second bill in equity "by agreement of both parties without consulting the sureties" relieved the sureties from liability "on account of the injunction granted in that case notwithstanding the reservations contained in the stipulation of May 31, 1933." He further ruled that the operation of the injunction in the first bill was "effectively terminated by the voluntary dismissal of the case" and that the bonds given therein were in force, since it did not appear that the court had approved the provision in the four-thousand-dollar bond rendering the former bonds null and void.

This was error. The only reasonable conclusion to be drawn from the documents themselves and from the reported facts is that all parties understood that the first bill was to be dismissed and that the bond filed in connection with the new bill was to supersede the bonds previously given. It is unnecessary, however, to recommit the report since the general finding that the defendants are indebted to the plaintiff in the sum of $4,000 follows as a matter of law from the special facts found. See *Riley* v. *Farnum*, 62 N. H. 42, 44; *Eastern Electric &c. Co.* v. *Ekdahl*, 84 N. H. 339, 340.

*Judgment for the plaintiff.*

All concurred.