MEMBERS OF DEMOCRATIC EXECUTIVE COMMITTEE, LAUDERDALE COUNTY, et al. *v.* HATCHER, et al.

No. 43197 November 9, 1964 168 So. 2d 533

*Gipson, Gipson & Wiley, Dunn & Singley,* Meridian, for appellants.

*William E. Ready, Russell Wright,* Meridian, for appellees.

LEE, C. J.

On petition of B. L. Hatcher and Mrs. Clyde Gibson, the chancellor, on August 19, 1963, granted, without notice, an interlocutory injunction against Lauderdale County Mississippi Democratic Executive Committee and others "prohibiting each and every defendant from destroying, moving, disturbing or tampering with any or all of the tax receipt books, registration books, poll books, ballots, ballot boxes, general records and information related or pertaining to the Democratic Primary Election held in this County on August 6, 1963 and from interfering with, impeding or doing anything, other than assisting those persons, officials and/or Masters, named hereinbelow, in taking, controlling, moving, storing, auditing, reviewing and investigating all of said records and information."

A demurrer was filed by the members of the Lauderdale County Mississippi Democratic Executive Committee and H. L. Morgan, sheriff and tax collector of the county, setting up that there was no equity on the face of the petition. The court declined to pass on the demurrer at that time. At the same time these parties filed a motion to dissolve the temporary injunction theretofore issued. Being unable to obtain a prompt hearing on either of these courses, counsel sought and obtained from a justice of the Supreme Court of this State the

right to present a motion for a writ of certiorari thereon. The time therefor was set Monday October 7, 1963. Early that morning, as counsel were making ready to go to Jackson, a conference ensued between counsel for complainants and defendants when William Ready, attorney for the petitioners, made the following notation of dismissal on the margin of the original bill, to-wit: "Dismissed without prejudice on this the 7th day of October 1963, by the attorney for Petitioners at cost of Petitioners. William Ready, attorney for Petitioners."

Subsequently, following the dismissal, the movants sought and obtained a hearing on their suggestion of damages on dissolution of the injunction, and prayed for an award of damages in the amount of $1,500, being the value of the fees of their attorneys, because of the wrongful suing out of the injunction.

In answer, the complainants denied that the defendants had been damaged in the amount demanded or any sum whatever.

After hearing the evidence, which consisted of testimony of the two attorneys, who represented the defendants, the court rendered an opinion, sustaining the complainants' motion to exclude the evidence for the defendants and dismiss the suggestion for damages.

From the decree entered thereon, the defendants appealed.

The appellants contend that the court was manifestly wrong: that they, in no way, agreed that the dismissal by the appellees without prejudice would operate to extinguish such claims as the appellants might have to recover damages for the wrongful issuance of the injunction.

On the other hand, the appellees argue that the appellants' effort to obtain an award of damages was without equity, because the injunction had been lawfully issued; and that the dismissal was, by consent of the

parties, and operated to deprive them of any claim for damages.

But the appellees dismissed their injunction without prejudice. Griffith, Mississippi Chancery Practice section 463, at 464 (2d ed. 1950), says: "The dismissal of a bill whether by the court or by the complainant operates as a dissolution of any injunction issued thereunder and establishes the fact that it was wrongfully sued out, and that the defendant is entitled to recover whatever damages he sustained by the issuing of same." A number of cases were cited by the textwriter.

In Johnson v. Howard, 167 Miss. 475, 141 So. 573 (1932), the opinion said that under the decisions of this Court, that question has long since been determined against such a contention. The opinion cited the above quotation from Griffith, and commented, "We think the principle laid down by the author of that work is fully justified by the decisions of our Court," citing a number of cases.

The following response is made to the argument that the dismissal in this case was by consent of the parties, and that the appellees are not liable for damages.

It must be remembered that one of the attorneys, after testifying that in the Sunday conference, counsel for appellees stated that he would dismiss his case. On Monday morning, the case had not been dismissed and the hearing in Jackson was set for 10 o'clock A.M., and counsel for appellants were ready to go to the hearing. The witness, one of the attorneys for the appellants, was cross-examined at length, a sample thereof, together with the answers returned, being as follows:

"Q. We had discussed, as you said, that I had to do certain things before I would have authority to dismiss it, and generally you brought it out to me that morning, as I recollect it, I told you I would, I am asking for clarification on that, but as I recollect it I told you that I would do it but that I was tied up but you all

gently but firmly said that you would bring it out and did bring it out and I said that I would be there and you said you would meet me there?

"A. Well, I will put it this way: You and I finally agreed over the telephone that due to the exigency of the case it would be expedient for you and I and Mr. Gipson to meet the next morning at 6:30 at Acme and you would dismiss the proceedings at that time, which you very graciously did.

"Q. Yes, sir, much more beautifully put. Simply it was more or less of a `. . .

"A. It was a consummation of an agreement you and I had reached the Sunday before that it would be dismissed."

After the evidence by the complainants, the court, on motion of the defendants excluded the evidence and dismissed the claim for damages. No evidence, of course, was offered by the appellees.

 █ It must be borne in mind that the cause was filed by counsel for appellees. He dismissed it "without prejudice". Such dismissal was not signed by counsel for appellants. Both counsel for appellants denied that there was any agreement on their part that they were foregoing any rights which they might have had after dismissal of the suit. Counsel, by his dismissal without prejudice, simply nonsuited the cause and thereby reserved, if appellees desired, the right to file another action. See Black, Law Dictionary 590, 1402 (3d ed. 1933), as follows: █ "The effect of the words 'without prejudice' is to prevent the decree of dismissal from operating as a bar to a subsequent suit. Lang v. Waring, 25 Ala. 625, 60 Am. Dec. 533." "Where an offer or admission is made 'without prejudice', or a motion is denied or a bill in equity dismissed 'without prejudice', it is meant as a declaration that no rights or privileges of the party concerned are to be considered

as thereby waived or lost, except in so far as may be expressly conceded or decided.''

Counsel for appellants did not sign their approval of a consent decree. See how important such an act is for the validity of the final action in such a matter. Griffith, Mississippi Chancery Practice section 818 (2d ed. 1950).

Appellees cite a number of authorities. In the written opinion, which the learned Chancellor filed, attention was called to 28 Am. Jur. *Injunctions* section 340 (1959), with the quotation of the first sentence as follows: ''A dismissal or discontinuance of a suit in which an interlocutory injunction has been issued, which amounts to a determination that the injunction has been improperly issued, gives a right to an action on the injunction bond or undertaking.'' He then cited the sixth sentence thereof with particular emphasis on the listed footnote 14, as follows: ''A different rule applies, however, where the plaintiff's voluntary dismissal or discontinuance of the action or the dissolution of the injunction is made with the consent of the defendant,[14] or where the suit is dismissed by the voluntary joint action of both plaintiff and defendant without any legal determination of the merits of the controversy or the rightfulness of the injunction.'' The cases cited under the footnote were Crossman v. Quimby, 89 NH 91, 193 A. 213 (1937); Columbus, H. V. & T. R. Co. v. Burke, 54 Ohio St. 98, 43 NE 282 (1896), 32 LRA 329. But in the Crossman case, it was held that no inferance of waiver could be drawn where, as in that case, the parties to the litigation had expressly saved all rights of action by reason of damages caused by the injunction. It does not appear, from a close reading of the Burke case, supra, that it is of any help in explanation of the principle involved in the present case.

In Mengel Co. v. Local 4-443, International Woodworkers of America, 220 Miss. 317, 70 So. 2d 613 (1954),

it was disclosed that on November 3, 1952, the injunction against mass picketing was executed. On March 27, 1953, a new collective bargaining contract was entered into, pickets were removed from the plant, and the employees were returned to work. At the April 1953 regular term of the Chancery Court, 20 days after the strike ended, the local filed an answer, seeking damages. The trial court awarded damages; but, on appeal, this Court held that it was brought to the attention of the trial judge that there was just cause for the temporary injunction, and it was lawfully issued, but it had been removed by the subsequent events which effected a settlement of the matter. Consequently this Court reversed the decree of the trial court as to damages and rendered a decree in that respect here for the company. There was no settlement of the subject matter when the present case was heard on the suggestion for damages. The Court finds it necessary to comment on other authorities.

■■ ■ At the close of the evidence for the appellants, together with the logical inferences therefrom, it appeared that appellants had shown that their attorneys had performed services; that they were valuable; and that appellants were entitled to recover. The case had been made out. Instead of sustaining the motion to exclude, the court should have overruled it, and given the appellees the right to go forward. Griffith, Mississippi Chancery Practice section 584 at 615 (2d ed. 1950).

Consequently, the decree is reversed and remanded in order that the appellees, if they desire, may have an opportunity to present evidence in denial of the appellants' version.

Reversed and remanded.

*McElroy, Rodgers, Jones and Brady, JJ.,* concur.