By the Court.

The understanding of this case, which, at first sight, may appear intricate, depends altogether on a clear view of the principal facts, as they stand by themselves, when disengaged from the crowd of unimportant circumstances, with which they are attended.
Ambroise Cuvillier, being indebted to Brognier Declouet, one of the appellants, in a sum of $ 27,000 payable at one, two, three, four and five years, for the price, or the residue of the price, Of some real estate, which he had bought from him, and finding himself unable to satisfy that debt as it became, due, contrived to procure from *344 twenty-two individuals of his acquaintance, among whom were the appellees, a promise to pay Brognier, in their own individual notes. The understanding of the parties, so far as the intention of each may be conjectured from the acts and declarations of some of them, seems to have been that Brognier Declouet should transfer to these twenty-two persons all his rights and actions against Cuvillier, and that he should thereupon receive from them their own individual obligations at one and two years, to the amount of $ 22,000. This arrangement was negociated between Pierre Besse, agent of Brognier Declouet, and Ambrotse Cuvillier. John Soulié, one of the twenty-two persons above mentioned, supposed by Desse to have power to act in the name of them all, had also some conversations with P. Desse upon the subject ; but never entered into any discussion with him concerning the contemplated conditions of the contract. Those conditions were reduced to writing on the 2d of June 1812, by Michel de Armas, Notary Public, conformably to a sketch which Cuvillier gave him. The principal outlines of them are, that in consideration of the sum of $ 22,000, paid to Brognier Declouet by the twenty-two individuals therein named, in their own several promissory holes at one and two years, he transfers to them his claim against Cuvillier amounting to the sum of $ 27,000, as established in the bill, of sale of part of his planta *345 tion to said Cuvillier, that he delivers to them five notes of the said Cuvillier endorsed by Alexander St. Amant, each of the sum of $ 5,400, which had been consented by Cuvillier and St. Amant to facilitate the disposal of the aforesaid sum of $ 27,000; and that he subrogates them to all his rights, actions and mortgages against Cuvillier. Soulié, after having read the instrument, signed it, and delivered to the Notary some of the promissory notes which were to be the price Brognier’s transfer, telling the Notary that after Cuvillier should have brought him the remainder of the promissory notes, and after Brognier should have complied on his side with his engagements, by releasing a certain judicial mortgage obtained against St. Amant, on the first of the above mentioned endorsements, by delivering the notes subscribed by Cuvillier and endorsed by St. Amant, and by affixing his signature to the contract, he might then deliver him all the said promissory notes of the twenty-two assignees. Some time after Soulié had signed the contract, three more of the twenty-two parties came in and signed.
All the notes, however, being not yet placed in the hands of the Notary, Brognier did not then examine the stipulation of the instrument. In the mean time, one of the twenty-two parties having expressed that he would not bind himself for one thousand dollars, but only for five hundred, it became necessary to look out for a twenty- *346 third subscriber, who would assume the payment of the remaining five hundred dollars, in order to fill up the sum $ 22,000, originally agreed upon. This circumstance having caused some more delay, near three months elapsed from the day on which the instrument is dated, before the sum of $ 22,000 was completed. On the 24th of August, Joseph Montégut junr. became a party to the contract and delivered his notes for the $ 500 remaining. Brognier Declouet their took tip the instrument, read it for the first time, and finding that it did not contain a clause, which he deemed important to his interest, to wit, a reserve of his mortgage on Cuvillier’s purchase for so much of the $ 22,000 as might happen not to-be paid on the, notes becoming due, he refused to sign the act as it was, and signified his intention to have this clause inserted. The clause was afterwards added in the-margin; and on discovering this alteration, and being informed of Brognier’s refusal to sign the instrument, three of the four who had signed it, blotted out their signatures. Brognier finding then that he could not obtain the consent of the parties to the addition of this clause, caused the Notary to transcribe the instrument as it stood before this alteration, and signed it. Of the twenty-three other parties, eight only appear to have signed. Some time after, Brognier prevailed upon the Notary to surrender him the notes which had remained *347 deposited in his hands, and negociated some of them.
In this state of things, the appellees Instituted the present suit in the Court of the First District for the recovery of their notes or of their amount and obtained there the verdict and judgment from which this appeal has been claimed.
Such are the facts on which this Court has to decide, 1st. whether the contract intended by the parties was ever completed; and 2dly. whether, supposing the contract not to have been entirely completed, the parties could recede from their promise, at that stage of the agreement, under the peculiar circumstances attending this case.
Upon the first question, to wit, whether this contract was ever completed, the inquiry which naturally presents itself is, in what manner do we see that each of the twenty-two persons intending to be parties to this agreement did agree with Brognier on the conditions of the contemplated contract ? This could be done only in one of two ways, either by giving their special power to some person to represent them, or by acquiescing one by one to those conditions. As to their having authorised any person to contract in their name, there is no evidence of it in any part of the record. The only act of theirs from which it *348 might be presumed, that they intended to authorise J. Soulié to act for them, is the delivery of some of the notes into his hands; but other notes were delivered to Cuvillier ; was Soulié the agent of some, and Cuvillier the agent of the others ? Besides, is the delivery of these notes an evidence of the intention of the parties as to the conditions on which they were to be given to Brognier ? The declaration of Desse, as to the agency of Soulié, is not more satisfactory. Soulié told him that the other subscribers had authorised him verbally to treat of the purchase of Brognier’s claim against Cuvillier. Is this assertion of Soulié sufficient evidence of the power given to him by the other subscribers ? And if it should be, does it explain the extent of that power ? Does it show that they had bound themselves to abide by what he should stipulate ? Desse himself was so far from considering Soulié as the attorney in fact of the others, that he did not enter into any discussion with him touching the conditions of the contemplated contract.
It is very plain that the twenty-two subscribers of the notes, though they may have employed Soulié to take the steps preparatory to the contract, reserved to themselves anally to agree or disagree to the conditions of it, when they should be reduced to writing and communicated to them. Of that there needs be no other evidence than that each of them was to put his signature to *349 the contract. But supposing Soulié to have been by them, fully authorised to contract with Brognier in their name, it does by no means follow that the contract was ever completed between them and Brognier. The coiiditions of the contract were reduced to writing as understood by Cuvillier and Soulié; but when Broguier came to read them, he found that they were not the conditions to which he would assent; he refused to sign them, and caused them to be altered. The contract therefore was not complete: there was still a clause on which the parties had not agreed; and in that situation of things some of the parties having thought fit to recede, an end was certainly put to the contemplated agreement as to them. In vain did Brognier withdraw his demand afterwards, and yield to their own terms. If they were one moment at liberty to retract and did so, they were completely discharged, and no act of the other party could bind them again.
Let us add to this that should no such circumstance have taken, place, still the parties might have recanted before signing, because it is a principle of our laws that where it has been agreed that the contract should be reduced to writing, until it is actually written and signed by all parties, either of them may recede. Febrero de Contratos chap. 7, sect. 1, no. 19, See also Domett, book 1st. tit. 1, sect. 1, art. 15.
*350 But, it is said, that in this case the appellees were not at liberty to recede, because the other contrading party had been induced to make sacrifices towards the performance of the contract on his part. In support of this, the appellant cited Pothier's Contrat de Rente, chap. 4, art. 1, sect. 3. Before examining whether any and what degree of analogy exists between this ease and that supposed by Pothier, we ought first to ascertain whether it be true that the appellees have receded from a contract; and that brings us back to the question: was any contract entered into between Brognier and the appellants? For unless the terms of the contract were finally agreed upon, there can have been no such a thing as a retractation, a retractation supposing always a previous consent. But, admitting the conditions of the contract to have been agreed to on both sides, what were these conditions ? Certainly those which were, inserted in the original instrument, signed by some of the parties, and afterwards recognised by Brognier. His reserve of a mortgage on Cuvillier’s property never can have been one of the conditions accepted by the assignees of all his rights, actions and mortgages against Cuvillier, for it is at war with the spirit and the letter of the whole transaction. It shows itself to have been an after-thought, and proves that the recanting party was Brognier himself, who after having agreed to transfer to the appellees and other *351 subscribers all his rights against Cuvillier, signified his intention to retain the most important of those rights, to wit, his mortgage on Cuvillier’s estate. If, therefore, an opportunity was then offered to the appellees to withdraw from the intended contract, Brognier has none to blame but himself. The same may be said of the sacrifice which he made when he released the judgment obtained against St. Amand. If the conditions were not finally agreed upon, why was he so forward in executing what was not yet an obligation on his part ? If on the contrary, the terms were accepted on both sides, they must have been those which were expressed in the instrument as originally reduced to writing, and then why did he, by his recantation, release the other parties from their engagement ?
It may be further observed that the discharge of the judgment obtained against St. Amant upon one of the five notes bearing his endorsement does not appear to have been any part of the conditions of the contract, as understood by all the parties; it not only makes no part of the stipulations contained in the instrument; but is a departure from the obligation there agreed to by Brognier to deliver to the assignees the five notes subscribed by Cuvillier with the endorsement of St. Amant, completing the sum of $ 27,000 by him transferred.
*352 From this view of the case it may be concluded, that the contract, intended to be entered into between the parties, was never completed; and supposing it to have been carried too far for any of the parties to retract without causing prejudice to the other, the first departure from it was the act of the appellant Brognier, not of the appellees.
The promissory notes of the appellees, deposited in the hands of the Notary Public to await the consummation of the intended agreement, ought therefore to have been returned to the subscribers of them, when they signified their determination not to complete the contract. The surrender of these notes to Brognier, however innocent may have been the intentions of the depositary, was certainly improper, and the appellees ought not to suffer for it.
It is, therefore, ordered and decreed that the judgment of the District Court be affirmed with costs.
On the application of the defendant, the Court granted a re-hearing. See post, December term.