The pleadings present the question whether (602) land purchased by a firm with partnership funds, for partnership purposes, and used as a part of the stock in carrying on the business — a tannery, for instance — in the absence of any agreement in the articles of copartnership, shall on the dissolution of the firm by the death of one of the parties descend as real estate to the heirs at law, or pass as personal estate to the executor or administrator of the deceased partner. *Page 394 
For the purpose of deciding the general principle, we will put out of the case the special circumstance that the intestate W. A. Patton was the owner of the land, and after the formation of the firm conveyed three-fourths of the lot to the other three members of the firm in fee simple, retaining the other fourth, and that the articles of copartnership provide that at its dissolution all the debts shall be first paid out of the joint funds, the capital advanced be returned to each partner, and "the balance of the partnership assets shall then be equally divided between the four copartners."
It is the settled doctrine of equity in the English courts that as between the partners, and for the purposes of the firm, real estate belonging to the partnership will be treated as personalty, if the partners have by the articles of copartnership or otherwise impressed upon it the character of personalty.
But it is a vexed question whether, after the dissolution of the firm by the death of one of the members, the debts being all settled and no purpose of the firm requiring it, the share of the deceased partner in the land shall still retain its character of personal property and pass to his personal representative, or shall descend as real estate to his heir at law.
Upon this point Mr. Justice Story in his work on Partnership, sec. 93, remarks: "There has been a great diversity of judicial opinion, (603) as well as of judicial decision, and the doctrine may be considered as open to many distressing doubts."
The idea that land shall be considered and treated as personal property is not readily comprehended by a plain mind, and requires explanation. It is an artificial and refined doctrine, adopted by the chancellors in England in reference to copartnerships, on the principle of giving effect to the agreement of the copartners, and originated in this wise: By the common law, on feudal reasons, land could not be sold for the payment of debts. By virtue of legislative enactments, the writ of elegit and statutesmerchants and staple subjected land to the claims of creditors in a modified way, that is, by giving the creditor a right to have the land extended at a yearly value, and to have an estate and receive the rents and profits until, at the extended value, the debt was satisfied. This, however, did not cause land to answer the purposes of trade and become the means of extended credit as fully as if it could be sold out and out like personal property. Again, land held in joint tenancy was subject to the doctrine of survivorship, by which on the death of either tenant the whole estate belonged absolutely to the surviving tenant. This was a great drawback to the formation of copartnerships in which the business made it necessary for the firm to own land. To obviate these difficulties, the articles of copartnership in many instances contained an agreement that the land required and owned as part of the *Page 395 
stock in trade should be considered and treated as personalty, and in others the acts of the parties furnished ground for the inference that it was the intention to impress on land the character of personalty in all such cases; and the courts inclined to extend them by construction and implication. It was held in equity that the agreement and intention of the parties should be carried into effect, and to do so the land must be considered and treated as personalty. This was all well enough and plain sailing, as between the copartners, and for the purpose (604) of the firm, but when it was attempted to carry the principle further, and make it apply to land ater [after] a dissolution by the death of one of the parties, and after the business is closed, so as to disinherit the heir at law, and allow the personal representative to take the land and dispose of it as personal property, the doctrine became much more refined and too attenuated for practical purposes, and calls for the remark of Mr. Justice Story, that "the doctrine may be considered open to many distressing doubts."
In this State land can be sold out and out, under execution, and the doctrine of the common-law survivorship is abolished. So the two rules of law which gave rise to this doctrine and were the foundation on which it was built have been taken away; and we are inclined to the opinion, under the rule cessante ratione, cessat lex, the doctrine is not applicable to the relation of copartners, even between the parties themselves; and we are clearly of opinion that it does not apply as between the heir at law and the personal representative. And in the absence of any adjudication by which it is fixed in our law, we regard it as another of those refineddoctrines of equity jurisprudence which render the English system so extremely artificial and complicated; and add it to the list of "pin money," "part performance," "the lien of a vendor for the purchase money," "the duty of the purchaser to see to the application of the purchase money," and the wife's equity for a settlement. McKimmon v. McDonald,57 N.C. 1.
There will be a decree declaring that the plaintiff is not entitled to that part of the fund in the hands of the defendants arising from the sale of the tanyard lot.
The cost to be paid by the plaintiff. (605)
Cited: Stroud v. Stroud, 61 N.C. 526; Mendenhall v. Benbow, 84 N.C. 650;Sherrod v. Mayo, 156 N.C. 148. *Page 396