## LOGAN *v.* GREENLAW and others.[1]

*(Circuit Court, W D. Tennessee. September 30, 1885.)*

1. PARTNERSHIP REAL ESTATE—JUDGMENT AGAINST EXECUTOR OF DECEASED PARTNER—HEIR AT LAW—SURVIVING PARTNER.

   It results from the equitable doctrine of the conversion of partnership real estate into personalty, that the heir at law is bound by a judgment against the executor of a deceased partner and the surviving partner, upon a bill filed to subject the partnership land to the satisfaction of the judgment; and he cannot require the plaintiff to re-establish the debt, unless by a direct proceeding the judgment is attacked for some collusion or other fraud, accident, or mistake sufficient to avoid it.

2. SAME—CODE TENN. §§ 2011, 2789, CONSTRUED—RECONVERSION INTO REALTY—EVIDENCE.

   Under the Code of Tennessee, allowing a remedy at law against the executor of a deceased partner, and saving to surviving p rtners their rights in the partnership assets as against the statute abolishing joint tenancies, the reconversion of the partnership lands into realty in favor of the heir at law does not take place until the partnership is wound up and the surplus is ascertained. It is only in this surplus that the heir has any beneficial interest, and he does not occupy, in reference to partnership lands, the same attitude he does as to other lands of his ancestor-descended to him, in respect to the effect of a judgment against the executor or administrator of the decedent, as evidence against himself. This distinction must be observed, to preserve the rights of the partners and their creditors intact.

In Equity.

This case was formerly heard on exception to the pleas. *Logan* v. *Greenlaw,* 12 Fed. Rep. 10. The plaintiff commenced an action for the death of her slave against a coal company, to which he had been hired, and attached property to secure her claim for damages. The property was released upon the security of a replevy bond, the firm of W. B. Greenlaw & Co. becoming sureties. The firm was composed of two brothers, W. B. and J. O. Greenlaw, who were engaged in many kinds of business as contractors, speculators in lands, etc. W. B. Greenlaw signed the bond in the firm name. The case was decided in favor of the plaintiff, and under the Tennessee practice she was entitled to judgment on the bond without notice to the sureties; but J. O. Greenlaw having died, appointing his brother, W. B. Greenlaw, his executor, a *scire facias* was issued, requiring the latter to show cause why judgment should not be entered on the verdict against him "individually, as surviving partner of W. B. Greenlaw & Co., and as executor of J. O. Greenlaw, deceased." To this *scire facias* he pleaded, as executor, that his testator was not bound by the bond, as it was signed without his assent, and was beyond the scope of the partnership business. This plea was, however, withdrawn, and the plaintiff had judgment against him individually, as surviving partner, and as executor *de bonis testatoris.* On appeal to the supreme court the judgment was affirmed, and execution returned *nulla bona.* The plaintiff filed this bill to subject the partnership land to the satisfaction of the judg-

[1] See note at end of case.

ment, making the administrator of the surviving partner, who had died, his heirs at law, the administrator *de bonis non* of J. O. Greenlaw, and his heirs at law, parties defendant. The only evidence offered of the debt was the judgment above mentioned, and except the matters of controversy raised by the pleas, and formerly adjudicated, the only defense made is that the judgment is not binding as evidence on the heirs at law of J. O. Greenlaw, and that, there being no proof of his assent to the bond, the bill should be dismissed. The answer avers that W. B. Greenlaw's signing the firm name was without authority; that his withdrawing the plea was a fraud upon his brother's heirs, etc. The only proof offered was as to the character of the firm business; that the bond was signed by W. B. Greenlaw, and not J. O. Greenlaw; and the record of the proceedings on the *scire facias*. Neither party offered any other proof as to the fact whether J. O. Greenlaw did or did not assent to the firm's becoming surety, nor of his knowledge or ratification of the transaction, nor of any circumstances of his connection with it, one way or the other.

*W. M. Randolph* and *Poston & Poston*, for plaintiff.

*Finlay & Peters* and *Thos. B. Turley*, for defendants.

HAMMOND J. This case presents a matter of much intricacy, involving, as it does, the confusing subject of partnership real estate. Exactly stated, the question is this: Can the heir at law of a deceased partner deny the fact of there being a partnership debt, on a bill filed against him and the surviving partner to subject the partnership real estate to a judgment obtained against the surviving partner and the executor of the deceased partner?

I feel very much disinclined, unless driven by the force of legal principles, to extend the privileges of the heir at law to litigate with creditors that which has been already litigated with the executor or administrator, simply because he is the heir at law, and land is demanded of him to satisfy the debt. The rule which allows him to do it, where his right is plainest, is purely a technical one, and has less force in our American system than in the mother country, where the present question would be readily answered against the claim set up here by the heirs at law. If a distributee or legatee is bound by a judgment against the executor or administrator because the law devolves the personal assets on the executor or administrator for the payment of debts, why should the heir at law be in any more favored condition when the law authorizes the executor or administrator, or the creditors, to resort to the land for a like purpose? He is not a party to the suit, truly; neither is the distributee or legatee. The ownership of the personal property is in the executor or administrator, to be sure, and there is no title in him to the land; but, after all, he is the agent of the law through whom the land is subjected to the satisfaction of the debts; he represents the decedent in the obligation to pay them, and in the discharge of the duties of his position he is, *sub modo*, as much interested in the land as the personalty. In

England, where the land was never bound, except when the ancestor had bound it by his contract, and the heir *eo nomine* was liable only because of his privity to that contract, there was some foundation for the assertion that a judgment against the executor or administrator was *inter alios;* but here, where lands are assets for the payment of debts quite as fully as personalty, and the law only requires that the latter shall be exhausted before the executor or administrator can resort to the former, the privilege that the heir has to recontest the judgment against the executor or administrator with the creditor is without much merit in itself. It is agreed on all hands that the judgment here is *prima facie* binding on the heir, and why should it not be conclusive for the same reason that it is *prima facie*? However, where the land of an ancestor descends to his heir, it is thoroughly well settled, notwithstanding the cessation, in a large measure, if not entirely, of the reason for the rule, that a judgment against the executor or administrator is not conclusive against him, but only *prima facie* evidence of the indebtedness of the ancestor. Hence, if this rule applies to partnership real estate, the answer to the question we are considering must be in the affirmative.

But I am satisfied, after a most mature consideration of the subject, that to so extend the rule would be to subvert the very grounds upon which a court of equity deals with partnership lands, and instead of freeing them from artificial restraints in the interest of trade and commerce, would unnecessarily impose a restriction on that use from which they have always been free, even within the purview of the common law. For although the common law could not, for the benefit of commerce, discard its artificial rules of real estate tenures and establish a tenure of partnership, it recognized the law-merchant, of which this doctrine was a part, and sent the partners or their creditors to a court of equity for the very purpose of doing that which within itself could not be done, namely, applying the real assets of a firm to firm uses with the same facility that its other assets were applied. Nor did this operate wholly in favor of the creditors or of the firm itself, because, although the title might be in one partner alone, or in all, so that by the technical terms of the conveyance the title survived to the last joint tenant, the law-merchant saved it to the next of kin, or, if you please, the heir at law, by enforcing through a court of equity the maxim that "among merchants there should be, in the interest of commerce, no survivorship;" and, again, the partners could, while living, by agreement *inter sese*, reconvert the partnership land into real estate, as at common law; or they could so convert any of the partnership personal effects, for that matter, even to the detriment of the creditors. But as long as it was afloat upon the high seas of the law-merchant, it was not land at all, and was subject, within the operation of that law, to none of its common-law incidents; and if death came to one of the copartners, it could never be again brought under the dominion of the common law

until all the uses of the partnership were ended; and not even then, strictly considered, because the death made a sale of the whole mass of assets necessary before the partnership uses could be fulfilled.

Now, within a court and a department of the law especially adapted to the work of annulling the restraints which, in favor of the heir, inherently belong to land in its normal condition, and in which the abnormal characteristics were impressed upon it for the purposes above described; where it is no longer favored as land belonging to the ancestor, but becomes equally and fully bound, without even so much as a qualified exoneration by postponement of liability until the exhaustion of partnership personal assets,—the very reason of the rule in favor of allowing the heir to relitigate with the judgment creditor fails, —utterly fails,—however it may be otherwise in the administration of a decedent's *individual* assets. There is no distinction in the law of partnership, as administered in a court of equity, between personal and real assets. The whole constitute *en masse* the partnership *stock,* so inseparable that for all purposes it is personalty, whether the partnership be solvent or insolvent, whether there be creditors remaining or not, and even when there is nothing to be done but divide the stock between the survivor and the representatives of the deceased partner, be they whom they may; one of the absolute rights of either partner being a sale of that stock for *money*, as a prerequisite to any division between them.

It is only the surplus after the debts are paid, and the balances of the partners *inter sese* satisfied, that belongs to anybody concerned, in his *individual* right. The *corpus* belongs to none separately, and to all alike, at each and every moment of the existence of the partnership, until at the very end this surplus is ascertained. This is the attitude in a court of equity when we get away from the mere technical forms of things, and look only at their substance. It is true, if at his death the deceased partner held singly the legal title, or if by operation of the deed, or our statutes abolishing joint tenancies, he were a tenant in common with the other partners, the *title* descends to his heir at law, but he holds it only as a trustee for the uses of the partnership. He has no beneficial interest in the land *qua* land, but only a remote beneficial interest in the surplus of the whole partnership stock, this land, and all else, of real, personal, or mixed property of every kind taken together. He can have no greater right than his ancestor had, and that is all he could possibly have claimed. I repeat that, logically, and according to the better rule, as now thoroughly established in England, he has, as heir, no interest whatever, this surplus going properly to the executor or next of kin; but in obedience to such statutes as we have in Tennessee, or the same rule established by judicial decision elsewhere, he can only be substituted for the executor in the distribution, if it be shown that the money in hand was the product of a sale of real estate; and possibly a court of equity should, in furtherance of the statute and decisions, keep

an account separately of such moneys, in order to give the eccentric rule effect in favor of the heir.

That which in the ordinary administration of the assets of a decedent, disconnected with the complications of any partnership, gives the heir his advantage, and secures him a beneficial interest in the land, is the requirement that the personal estate shall exonerate the land; but it would be importing an entirely new principle into the law of partnership assets to require partnership personalty to exonerate partnership realty, and would, as before remarked, subvert the very foundations of the whole structure of partnership assets. Let us assume a bill by creditors to administer partnership assets, one-half of which is personal property and the other real property: what rule of equity requires the court to pay the debts out of the personalty to favor the heir, rather than out of the realty to favor the next of kin? Could the heir maintain a bill against the surviving partner and the executor to compel them to exhaust the personal assets of the partnership before resorting to the land? Again, could the heir to whom the title to partnership land had descended, alien it by sale and defeat the partnership creditors, or the survivor, as he could individual creditors as to ordinary lands descended? Or would he be liable personally for lands of the partnership so aliened, instead of holding the alienee with notice as a trustee for the proper owners? He might successfully defend any suit by a partnership creditor for a personal liability, under our statute on that subject, upon the ground that it was only a surplus of personalty that belonged to him, and he could be held, I should think, only as any other trustee, for a breach of trust. If this be not so, the interest of commerce is not promoted, but the rules devised to protect it have been destroyed, commerce is again fettered, and land is substantially withdrawn from the uses of a partnership and placed upon precisely the same basis as individual lands descended to the heir. I do not think it was the purpose of the statute in our state, nor of the decisions supporting the American rule, to do this, and I am of opinion that the defendants do not occupy the position of heirs at law, holding lands descended from their ancestor, against which creditors are proceeding, as in the case of the administration of individual assets, but that they are *trustees*, holding the legal title of their ancestor, who was himself only a trustee, for the benefit of the partnership, and that it is in this attitude we must look at them in answering the question we have in hand.

In my reflections on this case I have sought some analogy to illustrate the footing of the defendants here, and it seems to me they might be likened to the heirs at law of a deceased trustee, named in a deed of trust, to whom the title had descended, with the superadded circumstance that they had acquired, no matter how, through their ancestor, a right to the surplus proceeds after the debt secured had been paid. Now, if the secured creditor should sue the debtor in a court of law, and, having established his debt, file a bill against the

heirs at law of the deceased trustee, praying for a sale of the land to satisfy the judgment, could they with any propriety claim that the judgment was not binding on them, and demand that, as against them, the creditor should again prove his debt before a sale could be had? Certainly not. Of course, if by a direct proceeding, by cross-bill, or otherwise, they could show that the judgment was the result of collusion between the creditor and the debtor to cheat them out of the surplus, or diminish it, or of some other fraud directed against them, or that there was some element of fraud, accident, or mistake, for which it should not bind the debtor himself, their interest in the surplus would give them a standing in court to make that attack upon the judgment. But otherwise it would be binding, because they are privies in estate with the debtor. So, here, the law of partnership places them, as to partnership real estate, in privity with the ancestor in his relation to the other members of the firm *as a partner*, subject to all his obligations as such, and not alone in privity *as an ancestor* for inheritance of lands, and those obligations *as a partner*, being transmitted to the executor, they are likewise in privity with him, and a judgment binds them *as to the partnership relation and assets*, but no further.

In my view of it, the land descends only *sub modo*, and they do not hold so much as *heirs at law*, with lands descended, but rather as *statutory assignees or distributees* of the surplus proceeds of partnership lands, and the analogy I have suggested fits the case precisely, if we look at the substance of the situation, rather than at its technical form, as we must. There is a general principle, fitly expressed in one of the leading cases, that "when the purpose of conversion is attained, conversion ends, or, more accurately, *reconversion* takes place," which is applicable to all phases of the subject, wherever the doctrine of out and out conversion is denied, or mitigated in its results in favor of the heir. *Foster's Appeal*, 74 Pa. St. 391, 398. It is fully approved by Mr. Justice FREEMAN in *Griffey* v. *Northcutt*, 5 Heisk. at p. 757. This principle is a safe guide in the consideration of all questions pertaining to this most perplexing subject, and attention to it will alone preserve intact the rights of all concerned. It confuses everything inextricably, to make the reconversion take place at any time *before* "the partnership affairs are wound up." And this view of the statute and decisions is necessary to save the law of partnership from complete shipwreck; the application to the question of *evidence* we have in hand being a mere incident of this occasion for its operation. We must draw a broad and deep line between the performance of a creditor when he comes with a judgment for a partnership debt against the executor of a deceased partner, and asks to have it satisfied out of the *individual* landed estate of the decedent in the hands of his heirs at law, and that performance when he comes with such a judgment, and asks to have it satisfied out of lands which the decedent in his life-time converted into firm assets, by appropri-

ating it to *partnership* uses, thereby impressing it with all the incidents of personal estate; casting the legal title, however, by descent to his heirs, subject to the same condition in which he held it, his death not affecting that condition one particle. This distinction the defendants ignore, and would place the plaintiff in the same situation she would be if this land had never been dedicated to partnership uses by their ancestor, thus depriving her of all benefit whatever of that conversion by him.

It is no answer to this to say that if this be a partnership debt, and she *now* proves it to be such, she can subject this land as partnership assets; for, if she proves that fact, she could by proving it just as well reach the individual lands of the deceased partner; and she must, if the defendant's contention be true, reach both in precisely the same way, and can reach neither with more facility than the other. But the very usefulness of the conversion is to afford a more ready and less incumbered remedy to subject partnership lands, and to save her from so roundabout a pursuit of satisfaction for her debt, by relieving her of the very necessity sought to be imposed by this defense. The executor of a deceased partner is, as to all partnership assets, personal and real, which were in the hands of the decedent at his death, and as to all his partnership obligations, the true representative of the decedent, *in the view of a court of equity,* which recognizes no distinctions between personal and real assets in such cases. So far as all beneficial ownership goes, he alone stands for the decedent; the heirs being necessary parties in a proceeding to subject the lands only because the naked legal title has gone to them, and they are required for the sake of conformity in dealing with the title. The fact is, the executor himself, strictly, does not own and properly has nothing whatever to do with the partnership assets which were in the hands of the deceased partner; for the decedent did not, in the view of a court of equity, so own them himself, either the realty or the personalty, both being under the joint dominion of the partners; and they passed in *that* ownership to the *survivor;* therefore, there is no more reason for claiming that a judgment against the executor would bind the next of kin, as to personal assets of the partnership, than that it would bind the heir at law, as to the real assets, and there is the same reason for claiming that it will bind either. Not so as to individual assets, for then both the title and ownership of personalty pass to the executor, while both the title and ownership of the realty pass to the heir; and for this reason alone there is no privity in judgment between them, as I have shown. The precise interest of the next of kin in personal assets and the title of the administrator or executor are such that it is only "an inchoate right to the surplus, after payment of debts, which is a right of action, the property remaining in the representative,"—which belongs to the next of kin. *Sneed* v. *Hooper,* Cooke, 200. Now this quite accurately and as well describes the interest of the heir at law in partnership real estate, the intervening

property or ownership being strictly in the surviving partner; qualifiedly, it may be said also to be shared by the executor of the deceased partner, upon whom the law has cast the representative duty of settling the partnership affairs as well as all other personal affairs of the decedent; but in both together we certainly find the same *status* that is occupied by an administrator as to individual personal assets, with the heir at law holding only an inchoate right of action for the surplus proceeds after paying the debts.

But whatever may be the technical legal attitude of the title to either class of property, in equity, the *ownership* of partnership assets belongs neither to the survivor, the executor, the next of kin, or the heir, all being jointly *trustees* for the benefit of whom it may concern; and a court of equity lays hold of the fund *as an entirety*, sells it for money, distributes it to whom it may belong, and pays no attention to the technical character of the title or possession except in the matter of procedure to bring all parties before the court.

Death does not sever that peculiar joint ownership among partners which a court of equity, if not a court of law, recognizes as a kind of partnership holding—although strictly there is no such *tenure*—and convert it into an ownership by severalties. Even before the death of any partner, the members of the firm, since the abolition of joint tenancies, become tenants in common, only in strictly technical relation; but this is the most naked of technicalities, and in a court of equity has no force except to control the rights of the partners, or their representatives, in distributing the surplus, after the partnership is wound up by settlement. After the equities of creditors and partners are satisfied, the legislature or the judges may, by legislation, alter the ordinary rules of distribution and give the proceeds or any part of them to the heir, and no harm is done, except to the homogeneity of the law. It would be unwise, in my judgment, to interfere with this beneficent doctrine of a court of equity by dissevering its tap root and relegating the partnership real estate to the category of ordinary lands descended to the heir.

The supreme court has held in *Watkins* v. *Holman*, 16 Pet. 25, that it is entirely competent for the legislature to subject lands descended even in the usual way to the ancestor's debt without any notice to the heir. The doctrine of equitable conversion of partnership lands does this, notably, by allowing the surviving partner to convey them in discharge of the firm debts, and the heir is only a necessary party to get the title out of him. And in *West Hickory Ass'n* v. *Reed*, 80 Pa. St. 38, where, by a contract, the ancestor had converted his land into personalty, the widow and heirs were held not entitled to notice of a proceeding to enforce the contract. A partner makes just such a contract of conversion of partnership lands, in the view of a court of equity.

It is not alone in the department of real estate tenures that a court of equity had to break down the rigid principles of the common law,

or supplement its defective operation in favor of its own recognition of the law-merchant, in order to secure the emancipation of partnership real assets, and their ready application to the purposes of commerce. It had likewise to supplement the common-law methods of procedure. For, although the common law recognized the maxim of the law-merchant that there should be among traders no survivorship, it did not recognize any peculiar tenure of partnership, but adhered to the technical law of estates and ownership, both as to real and personal real assets, so that the actual rights of the partners under the law-merchant, in their relation to each other and their common stock, could not have free scope; and this obstruction also entered into the law of the remedies against them for the benefit of those trading with them as creditors, so that if a partner died there was no remedy *at law* against him, and he was wholly released from the debts. His executor could not be sued. But a court of equity interfered here in aid of the maxim against survivorship, and said the obligation to pay was likewise several, and that the creditor might sue the executor in equity, but preliminary thereto there must have been an exhaustion of legal remedies against the surviving partner. Modern legislation, in Tennessee and other states, has imported this remedy into common-law procedure by allowing the executor to be there sued, and in this state, without any preliminary exhaustion of the surviving partner, all this being done in the interest of commerce. But when we come to the process of execution we must not fall into a confusion of ideas by overlooking the distinction between partnership assets in a court of law and in a court of equity, and between the administration of individual assets and partnership assets in those courts, respectively. A court of law administers all assets of a decedent by an execution *de bonis decedentis*, or, where the executor or administrator is in fault, by way of penalty, *de bonis propriis*, as to him. The fact that it was a partnership debt could *at law* make no difference, for the common law recognizes no execution against partnership assets, *as such*, and the statute giving the new remedy has not chosen to provide such an execution in analogy to that given by the common law against an executor or administrator. Again, even against a surviving partner there is, in execution, no distinction between partnership assets and his individual property; it goes against both, because he is liable in both capacities, and each kind of assets is alike leviable at law. *Lewis* v. *U. S.* 92 U. S. 618, 623. Hence, to avoid the inconvenience of such a state of things, a court of equity, at the suit of any one interested, will lay hold of the matter and bring the parties and the assets into a court, where these distinctions can be enforced, and the law-merchant fully executed in all its bearings upon the relation of the partners and their common stock.

It is no argument, therefore, as has been urged against the plaintiff's position here, that the execution runs *de bonis testatoris*, and can bind the executor only in that capacity. If the executor of a deceased

partner has any personal property of the partnership in his posses-
sion, it is, if not a wrongful possession, an irregular one; for that
possession should be, and in contemplation of law is, with the surviv-
ing partner, who may recover it from the executor, apply it to part-
nership uses, sell it for that use, and otherwise control it with all the
power of an absolute owner in that behalf.    This he may do even with
the real estate, and the purchaser obtains through the surviving part-
ner a good title, which will be perfected by compelling the heir to
surrender the bare legal title, which may be in him.    Truly, the ex-
ecutor is, technically, a tenant in common with the survivor of the
personal property, but he is not entitled to possession, and if an exe-
cution against him for a partnership debt finds it in that possession,
it only holds the property because of a technical ownership, and a
possession good against all the world, except the survivor, and, per-
haps, good against him everywhere, except in a court of equity.    For
this reason, the property is liable in his hands; and it is not at all so
leviable because there has been by the death any change in the part-
nership character of the property, or because it is in his hands as the
*individual* property of the decedent.    The decedent did not hold it so;
and once partnership property always partnership property, until the
partners, by their own consent, have severed it, or, after dissolution,
until final settlement, is the cardinal rule of a court of equity.    But
aside from all this, the executor, whether he be in possession of part-
nership assets or not, whether he have individual assets for adminis-
tration or not, is made suable under our law along with the surviving
partner, or apart from him, with the very design of enabling the creditor
to establish his debt and put it in judgment, *as a debt of the firm*, as
well as a personal liability against the partners severally; and the
fact that in this disseverance of liability the judgment technically as-
sumes the form of a several judgment and not that of a joint judg-
ment against both, cannot, in a court that looks behind mere techni-
cal appearances, be utilized to destroy the effect of the fact that he
has a judgment against *both*; particularly, when that adherence to
mere form would result in entangling the partnership real estate in
all the intricacies and perils surrounding the subjection to his debts
of ordinary real estate belonging to the partner individually, thereby
defeating the main purposes of the equitable conversion of such assets
into personalty.

What I affirm, therefore, is this: that whenever a partnership cred-
itor procures a judgment against the surviving partner and the ex-
ecutor of a deceased partner, as he may under our statute, that judg-
ment is, by necessary implication, *perforce of the statute itself which
allows such a suit*, interpreted as it must be by the equitable princi-
ple of the law of partnership, conclusive evidence of the fact that
there is a subsisting partnership debt unsatisfied, as against any and
all persons claiming the surplus of the partnership stock, whether it
be in form personal or real property; and for the reason that in a

court of equity, on a bill to subject the partnership assets to the judgment, they can claim that surplus only as privies in estate and representation to the surviving partner or the executor, one or both,—unless, by a direct proceeding, the judgment can be successfully attacked for some infirmity for which a court of equity will set it aside.

I have not overlooked the argument that there can be no hardship in requiring a creditor to come with the proof of the existence of *a partnership* debt, whenever and wherever he asks the aid of a court of equity, as against the heir, who ought to be heard in defense of his inheritance, to subject the partnership assets; and this, whether the heir holds the land as real estate, or can only claim the surplus as personalty. What has been already said is an answer to this, namely, that the judgment binds all who are privies; that it is agreed that it binds as to personal assets of the partnership, and a court of equity is blind in its administration to all distinctions between real and personal assets of a partnership, and looks upon and converts the whole into money; therefore the judgment against the representatives of that money is conclusive proof,—is all the creditor need produce, and it is violative of his rights to require more.

But there is another answer to this of the same character as the argument itself, of the justice of which answer the facts of this case afford the most satisfactory illustration. Here was a claim for wrongfully producing the death of a slave, which occurred before the commencement of our civil war. The claimant proceeded with all speed to attach the property of the tort-feasor to secure the loss. That property was released by the substitution for it of the indemnity bond of this copartnership, executed about 25 years ago. After a long time, and every possible delay, the plaintiff had judgment both against the tort-feasor and his sureties, the surviving partner and the executor of the deceased, which judgment was appealed, and, after further long delay, affirmed; the surviving partner in the mean time dying insolvent. The plaintiff's right to the satisfaction being resisted, she filed this bill, and after the lapse of a quarter of a century the demand is made that she shall produce witnesses who heard the nonsigning partner authorize the bond, heard him ratify it, or in some other way, by satisfactory proof, aside from the judgment, establish that fact. Now, it seems to me, in this particular case, that it is a hardship to require this, and that it should not be done, except in obedience to some imperative rule of law that affords no escape, and certainly not upon those technical appearances of a right to require it which have so earnestly been arrayed in this case, and which are, beyond doubt, formidable in their aspect, whatever may be said of their substance, when critically examined. Moreover, it is agreed that the judgment is *prima facie* binding, and I do not think the defendants have answered the *prima facie* case, ingenious as their argument is in that regard. The surviving partner was also executor of the deceased partner. He was the partner who signed the bond,

and was certainly bound; but as executor he put in a plea setting up a want of authority in himself to sign it for the firm, and that it was beyond the scope of the partnership business. This plea, however, he withdrew, and there was a judgment against him in both capacities. Conceding now that an indemnity bond for the benefit of a stranger, and even for the benefit of the partnership itself, given in the firm name, is binding, without the consent or ratification of the other, only on the partner who signs it, and it is argued that the plaintiff's claim appears to be not a partnership debt, and the court should not, therefore, give it that privilege without proof of ratification or consent. When the suggestion is made that there might have been proof at the trial, and that the judgment imports that there was, the defendants reply that the record shows that there was no such issue, that it was tendered but withdrawn; wherefore it is plain that the judgment did not establish that fact, it being only on a *nil dicit* after plea withdrawn. The survivor being himself executor of the deceased partner, it is further argued that it was a selfish fraud by him not to make the defense, and that the plaintiff should now be compelled to produce the proof of consent or ratification of the non-signing partner.

In a direct attack upon the judgment for fraud this would not be satisfactory proof of it. For aught we know the executor knew of his own knowledge, since he was himself the signing partner, that his brother, the copartner, did assent to or ratify the act; knew that it was a false plea and withdrew it because of that fact; or he might have been aware that the plaintiff was prepared with other proof, and so withdrew the plea. Hence the fact that he withdrew it does not necessarily show fraud on his part; more inferentially, it does not, since these brothers were not engaged in any special business, but were partners for all purposes, having nearly, if not entirely, what is called a universal partnership; and under that relation there may have been an interest of some kind, now unknown to us, forcibly inducing the firm to execute the bond. But again, the technical effect of the record is not that suggested by the defendant's argument. The executor might have submitted to a default wholly; and the fact that he put in this defense and withdrew it, shows that he was advised of its importance, and that he might have sustained it if it had been a true defense. But a default either from ignorance, or with knowledge, or a neglect to stand by the plea when made, binds him and his privies as effectually as if the defense had been in terms decided against him; and this is the technical bearing of the record, as evidence, and not that urged by defendants. Therefore, I repeat, the evidence of the defendant's to overthrow the *prima facie* effect of the judgment is not satisfactory. After the surviving partner is dead, and possibly all other witnesses to the transaction, and the lapse of so much time, the court should require more substantial evidence of the fact that there was no assent or ratification by the non-

signing partner than the mere inference the defendants seek to draw from circumstances that are not, in themselves, inconsistent with either theory that he did, or did not, assent to be bound, and yet, technically, bear in favor of plaintiff here.

I have not extended this opinion by the citation of and comment upon the authorities, because the complexities of the case have been such that I could not do this within reasonable limits. I have not been willing to decide the question without some safe guide of a controlling principle or adjudicated case, and have been disappointed by not finding an exact decision, laborious as the researches of counsel and myself have been. I shall collect the authorities in a foot-note, with such classification of them as will enable the intelligent investigator to apply them for himself. It is necessary, however, that I should say of the Tennessee authorities that they recognize in the fullest manner the equitable doctrine of the out and out conversion into personalty of partnership real estate, and agree with KENT, STORY, and other American authorities in its favor, and not with Chancellor WALWORTH, and those who have followed him in a departure from the doctrine. The leading case, however, seizes upon the use of the word "heirs" in the North Carolina act of 1784 to establish a statutory modification of the doctrine, so far as is necessary to deflect the surplus from the personal representative to the heir. Mr. Justice REESE, than whom Tennessee never had a more accurate and learned judge, in a subsequent case reluctantly followed this construction of the statute, but insisted that it had not at all changed the law, and was never so intended. The subsequent decisions have not extended the operation of the statute, and show abundantly that they recognize the doctrine of conversion to its fullest extent. They support in principle the ruling made here, and do not, in my judgment, at all favor the contention of defendants. Although the heir is entitled to the *surplus*, these decisions, especially *Griffey* v. *Northcutt*, 5 Heisk. 746, 757, 758, and *Jones* v. *Sharp*, 9 Heisk. 660, preclude the idea that he can treat the land as if descended to him in the ordinary way, and demand all the advantages that position would give him. He either has all these advantages, or he has none. That many of them he cannot have, is too plain for argument to any one familiar with our peculiar system of laws for the subjection of the real assets to the debts of a decedent. What possible advantage would the rule of conversion be to the plaintiff, or any creditor of the partnership, if, in a case like this, it could not be invoked? Protection from claims of homestead and dower, evasion of judgment liens for individual debts, avoidance of transfers by individual partners without consent of the others, and the like, are no more important than this application of the doctrine to the rules of evidence; and those and all other advantages yield just as readily as this to the destructive influences of the principle insisted on by the defendants in this case. The heir at law would deprive the creditors and the partners themselves of all bene-

fit of the conversion if he can plant himself on the ground selected for him by counsel in this case, and bring about a complete paralysis of the law of partnership in that regard. His position in equity as a trustee for those interested in the partnership is wholly inconsistent, in its fullest scope, with his position as heir at law, upon whom the individual lands have descended under our Tennessee system. The one must be subordinated to the other, in the manner I have done here, or the whole power of a court of equity over partnership assets would be emasculated by bringing it within the influence of our statutes for the administration of the real assets of a decedent. It is simply impossible to maintain the two together upon any other basis than that which I have adopted. The proviso in our statute abolishing joint tenancies, upon which the heir must rely solely for his title, was intended, I think, to save the law of partnership from such disastrous consequences, and upon that proviso, more than anything else, read, as I read it, in the light of the cardinal principles of equity governing the relation of partners and their creditors to the joint assets, I base this judgment.

It is necessary, too, that I shall notice especially the case of *Lang* v. *Waring*, 17 Ala. 145, S. C. 25 Ala. 625, so confidently relied on by defendants. It does not seem to me conclusive. It was a contest over the *legal* title, the plaintiffs claiming it by purchase at a sheriff's sale under a judgment and execution against the surviving partner, and the defendants, as heirs at law of the deceased partner. There was also a judgment against the executrix of the deceased partner, but it had been satisfied by compromise and payment. The parties went into the proof, and the court found, on that proof, that it was not a partnership debt. The plaintiff did not seem to rely much on the judgments, or either of them, but sought to show, outside of them, that they were just. His reliance was the validity of his legal title under the execution against the surviving partner, and the decision was that, under the laws of Alabama, the interest of neither partner was leviable at law, and could be reached only in a court of equity. No matter how conclusive the judgments may have been as evidence that the debt was a partnership debt, the plaintiff had no title, and the bill was not filed to subject it in equity. The technical attitude of the title was all against the plaintiff, and the equitable doctrine was not at all invoked, as it is here. The court conceded that its ruling would be the same whether the surplus was taken as real estate from the ancestor or as personalty from the executor, because "it is an appeal to the equity of the court, to sanction an act done by another, which is of no validity without its sanction." And, it might have added, of no validity with that sanction, because the plaintiff under the execution had no vestige of a title, and the court of equity in that proceeding could have given him none, whether it was a partnership debt or not. All that was said about the conclusiveness of the judgments was beside the case, and while it is in favor of the defendant's argument here,

it is not an adjudication in their favor, and not being such, it must stand on its merits, like the expression of opinions elsewhere. Here, the plaintiff invokes the aid of a court of equity to sell the land, at a fair price, to satisfy her judgments, which, *prima facie* at least, are binding as evidence. There, the plaintiff was seeking to sustain possession under a sale at law, for a nominal price, by enjoining ejectment against it; and getting no title by the sale, the judgments properly were not allowed to strengthen his claim of title. I concede that it is altogether a fair inference from the decision that in this case that court would, on its reasoning there, decide that the judgments here were not conclusive; but I still think they would also hold that the defendants have not in this case overthrown their *prima facie* effect, as was done in that.

It has occurred to me that the question we are considering being one not only of general equity, but of commercial law likewise, and either of these being beyond the influence of state statutes or decisions, the federal courts should determine it for themselves, and according to the equitable principle of out and out conversion into personalty. If so, the case would be of easy solution; but I am always unwilling to take that course of decision, unless the way to it is plainer than it is here. It is wholly unnecessary to consider that view, for I feel satisfied that the law of the state is as I have ruled it. Let the plaintiff have a decree; but as there may be an adjustment without further proceedings, it is not necessary to now indicate the details, and the parties may apply for further directions. So ordered.

NOTE.

1. North Carolina act 1784, c. 22, § 6: "And whereas, in real and personal estates held in joint tenancy, the benefit of survivorship is a manifest injustice to such as may happen to die first: Be it therefore enacted by the authority aforesaid, that in all estates, real and personal, held in joint tenancy, the part or share of any tenant dying shall not, for the future descend, or go to the surviving tenant or tenants, but shall descend or be vested in the heirs, executors, administrators, or assigns respectively of the tenant so dying, in the same manner as estates held by tenancy in common, any law, usage or custom to the contrary, notwithstanding: Provided, always, that estates held in joint tenancy for the purpose of carrying on and promoting trade and commerce, or any other useful work or manufacture established and pursued with a view of profit to the parties therein concerned, shall be vested in the surviving partner or partners, in order to enable him or them to settle and adjust the partnership business and pay off the debts which may have been contracted in pursuit of the said business; but as soon as the same shall be effected, the survivor or survivors shall account with and pay and deliver to the heirs, executors, administrators, and assigns respectively of the deceased partner or partners, all such part, share, and sums of money as he or they may be entitled to by virtue of the original agreement, if any, or according to his or their share or part in the joint concern, in the same manner as partnership stock is usually settled between joint merchants and the representatives of their deceased partners." 1 Martin, 352; 1 Scott, Rev. (Tenn.) 291; Car. & Nic. (Tenn.) 417.

2. The foregoing proviso as carried into the Code of Tennessee of 1858: "Nothing in the preceding section is intended to affect the right of a surviving partner to the joint property of the firm, in order to settle and adjust the partnership business; such partner accounting with the heirs and personal representatives of the deceased for his share in the surplus." Code Tenn. (T. & S. Ed.) § 2011; Id. (M. & V. Ed.) § 2818.

3. Tennessee decisions construing the foregoing acts, and supporting the opinion generally: McAlister v. Montgomery, 3 Hayw. (Tenn.) 94; Yeatman v. Woods, 6 Yerg. 21; Gaines v. Catron, 1 Humph. 512, 522; Hunt v. Benson, 2 Humph. 458; Boyers v. Elliott, 7 Humph. 204; Moreau v. Saffarans, 3 Sneed, 595; Barcroft v. Snodgrass, 1

Cold. 431, 444; Piper v. Smith, 1 Head, 92; Griffey v. Northcutt, 5 Heisk. 746; Solomon v. Fitzgerald, 7 Heisk. 552; Jones v. Sharp, 9 Heisk. 660; Brooks v. Brooks, 12 Heisk. 12; Williamson v. Fontain, 7 Baxt. 212; Lyon v. Lyon, 1 Tenn. Ch. 225, 231, 232; Spiro v. Paxton, 3 Lea, 75; Gill v. Lattimore, 9 Lea, 381.

4. North Carolina decisions construing the foregoing statute. Waugh v. Mitchell, 1 Dev. & B. Eq. 510; Summey v. Patton, 1 Winst. Eq. 52; S. C. 60 N. C. 601, and note; Stroud v. Stroud, Phil. (N. C.) 525; Baird v. Baird, 1 Dev. & Bat. Eq. 524.

5. Tennessee statutes making all joint actions also several, and permitting the executor or administrator of a deceased partner to be sued at' law. Code Tenn. (T. & S. Ed.) ¿ 2789, and notes; Act 1789, c. 57, ¿ 5; Car. & Nic. 415; Saunders v. Wilder, 2 Head, 577 Simpson v. Young, 2 Humph. 513; Taylor v. Taylor, 5 Humph. 109; Trundle v. Edwards, 4 Sneed, 572.

6. Tennessee statutes for the subjection of real assets to the payment of a decedent's debts. 5 Geo. II. c. 7, ¿ 4; Code Tenn. (T. & S. Ed.) ¿¿ 2252, 2273, and notes. The heir is answerable personally if he alien the land descended before suit brought, and the purchaser takes a good title. Id. ¿¿ 1765, 2256, and notes; Smith v. Stump, Peck, 278.

7. Heir at law is not bound by a judgment against the executor or administrator, in a proceeding to subject lands descended, and the reason of the rule. Notes to sections 2260, 2262, Code Tenn. (T. & S. Ed.;) Sneed v. Mayfield, Cooke, 60; Gilman v. Tisdale, 1 Yerg. 284; Neal v. McCombs, 2 Yerg. 9, HAYWOOD, J., dissenting; Roberts v. Busby, 3 Hayw. 299; Peck v. Wheaton, Mart. & Y. 353; Green v. Shaver, 3 Humph. 139; Anderson v. Clark, 2 Swan, 156; Wooldridge v. Page, 9 Baxt. 325; S. C. 1 Lea, 135; Kyle v. Kyle, 1 Tenn. Leg. Rep. 264; Henry v. Mills, 1 Lea, 144; Buntyn v. Buntyn, 9 Lea, 319; Woodfin v. Anderson, 2 Tenn. Ch. 331, 339; Trafford v. Young, 3 Tenn. Ch. 496; Wells, Res Adj. ¿ 52 et seq.; Freeman, Judgm. ¿ 163 et seq.; Garnett v. Macon, 6 Call, 308, 337; Meeks v. Vassault, 3 Sawy. 206; Keefe v. Malone, 3 MacArthur, 236; Steele v. Lineberger, 59 Pa. St. 308.

8. Judgment against a surviving partner is not binding on the representatives of the deceased partner, and the reason of the rule. 2 Lind Partn. 665, note 1; Buckingham v. Ludlum, 37 N. J. Eq. 137; Leake v. Lawrence, 11 Paige, 81; Hanna v. Wray, 77 Pa. St. 27, (contra.)

9. Decisions of the supreme court of the United States recognizing the doctrine of the equitable conversion into personalty of partnership real estate, and the proceedings against partners generally. Clagett v. Kilbourne, 1 Black, 346, 349; Shanks v. Klein, 104 U. S. 18; S. C. in court below, 3 Cent. L. J. 799; Allen v. Withrow, 110 U. S. 119, 130; S. C. 3 Sup. Ct. Rep. 517; Inbusch v. Farwell, 1 Black, 566; Watkins v. Holman, 16 Pet. 25; Fitzpatrick v. Flannagan, 106 U. S. 648, 654; S. C. 1 Sup. Ct. Rep. 369; Case v. Beauregard, 99 U. S. 119; Lewis v. U. S., 92 U. S. 618; Nelson v. Hill, 5 How. 127; Rogers v. Batchelor, 12 Pet. 222. See, also, Kendall v. Hamilton, 4 App. Cas. 504.

10. The notes of my researches while investigating this subject contain references to many text-books and cases too numerous for citation, without a more careful and critical classification than is possible here; particularly, since there is much conflict of decision, and the local law of each state should be carefully examined to understand the value of any given adjudication. It is sufficient to say that the effect of the doctrine of equitable conversion of partnership real estate is such that the land is not subject to dower, homestead exemptions, judgment liens, locality as to jurisdiction, and like incidents of land in its normal condition; that after the death of a partner the rents belong to the surviving partner, he may bring the action for trespass, etc., compensation for public uses belongs to him, and he may sell it for partnership purposes; that the heir at law is a trustee for those interested in the partnership, it being often decided that he is not a necessary party to a proceeding to subject the land to the partnership debts, often that he is only a necessary party to extract the title from him, while the executor is always a necessary party; and, generally, that it is not until the partnership uses are satisfied that he has any interest whatever. E. S. H.

---

NOTE.—Since the foregoing opinion was prepared there has appeared a valuable article on the subject of "Partnership Real Estate," by Guy C. H. Corless, Esq., in which the cases have been extensively cited and intelligently considered. See Albany Law Journal, vol. 32, pp. 284, 304, 326. E. S. H.